**Nazareth GATES et al., Plaintiffs,**

**United States of America,**
**Plaintiff-Intervenor,**

v.

**John COLLIER et al., Defendants.**

**No. GC 71–6–K.**

United States District Court,
N. D. Mississippi,
Greenville Division.

June 30, 1978.

Ronald R. Welch, Jackson, Miss., Shawn Moore, Dept. of Justice, Washington, D. C., H. M. Ray, U. S. Atty., Oxford, Miss., for plaintiffs.

W. W. Westbrook, IV, Asst. Atty. Gen., Jackson, Miss., Pascol J. Townsend, Jr., Drew, Miss., for defendants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

The court is presented with the motion of the Mississippi Department of Corrections and its Commissioner for the adoption of revised disciplinary rules and procedures applicable to inmates incarcerated at the state penitentiary and the approval of proposed booklet entitled *Inmate Handbook Rules and Regulations.* The revised disciplinary regulations are set forth in sixteen sections, eight of which (§§ I, II, III, IV, VII, XIV, XV and XVI) are objected to by neither counsel for plaintiff-inmates nor by the Department of Justice, representing plaintiff-intervenor. Of the remaining eight regulations, the Department of Justice counsel objects to five (§§ V, VI, VIII, XI, XII). In addition to joining in these objections, counsel for plaintiff-inmates interposes certain other objections, some of which are without merit and require no discussion.

### 1. BACKGROUND

Originally, the disciplinary rules and regulations for inmates at the state penitentiary were prepared by the prison's security chief, Col. Mailly; they were submitted to and approved by this court on October 20, 1972; they appear in extenso in the margin and text of the Fifth Circuit opinion in *Gates v. Collier*, 501 F.2d 1291, 1315–17, n.14 (1974). By that opinion, the Fifth Circuit generally affirmed our approval of the rules, except that the defendant officials were directed to make certain limited revisions in the light of the then recent Supreme Court decision of *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). On remand, defendants revised their rules in accordance with the Fifth

Circuit's mandate. The revised submission, after hearing of objections, was approved by us and ordered to be implemented, printed and distributed to the inmate population. See *Gates v. Collier*, 390 F.Supp. 482, 491 (N.D.Miss.1975). No one appealed from this portion of the court's order, and the state prison has, until this date, operated under the prison rules thereby adopted.

## 2. SUMMARY OF OBJECTIONS

The principal objections to the revised rules interposed by plaintiff-intervenor and plaintiff-inmates are twofold: (1) The creation of the office of a classification officer, holding the rank of Major or above, assigned by the Warden or a Program Associate Warden, to classify Rules Violations Reports (RVR) as either Minor, Serious or Major, who would possess discretionary authority to decide upon the seriousness of the offense reported and recommend corresponding appropriate punishment therefor. This proposal is in marked contrast to a fixed schedule of acts listed as major or minor violations, with stated punishments, as detailed in the Fifth Circuit opinion, 501 F.2d at 1315, n.14. (2) All offenses specifically delineated as major or minor would be eliminated, with the determination to be arrived at on an individualized, ad hoc basis, after the offense was found to have been committed.

## 3. FACTS

At the evidentiary hearing, Col. Mailly was the only witness to testify as to the need or desirability for the revised regulations. Mailly stated that in his opinion it would improve the procedure to have a classification officer with power to decide whether certain misconduct of an inmate should be classified as major, serious or minor instead of having specific violations categorized as either major or minor, with stated punishment for each such violation. Mailly stated that the investigating free-world employee interviewing the inmate accused of a rule infraction would not necessarily appear before the disciplinary hearing committee, or council, whenever the inmate indicated an intention to plead guilty to the charge and signed a waiver to that effect in the presence of the investigating officer. In any case, Mailly stated that the hearing council which imposed discipline, in its discretion, would have the right under the new rules to call the investigating employee for testimony. In contested actions the investigating employee would list witnesses having knowledge of the alleged infraction.

Mailly stated that it promoted the interest of the prison's integrity that an inmate not be required to appear as a witness at the disciplinary hearing against his wishes, upon the reasoning that giving testimony might subject him to harm at the hands of the accused inmate or other inmates. Mailly concluded that on some occasions it was better to obtain a sworn statement from an inmate-witness and have it read in private —admittedly, a procedure which necessarily deprived the accused inmate of any opportunity for cross-examination. Mailly was of the view that in those situations where live testimony could be safely given, such would be preferable to sworn ex parte statements, but that in a prison setting, it often becomes impracticable, particularly where an inmate may be released on parole or upon detainer to another state, to obtain the personal appearance of a distant witness to testify as to the violation, whether classified as major, serious or minor, of an institutional rule. Mailly emphasized that in making a personal appearance, the option should be that of the inmate-witness and not of the investigating officer. He also maintained that the hearing committee, in its discretion, should be able to limit the number of inmate-witnesses at a hearing on the basis of the findings of the investigating employee, and the investigating employee might properly cull from his investigative file a select number of persons who might present to the disciplinary committee material matter regarding the rules infraction.

Mailly conceded that under the prior rules as originally approved and later revised under this court's order, there had

been an orderly administration of the prison, but that, on the whole, he regarded the proposed new rules as better for the inmates. For example, he reduced certain punishments by decreasing time to be spent in isolation to 20 days from a maximum of 60 days, and by reducing loss of visitation days not to exceed four consecutive visiting days. He conceded that the number of reports of rules infractions contained in an inmate's personnel file might well have an influence on the classification committee in assignment of camp housing and jobs, as well as any change in the classification of the inmate. While Mailly was not familiar with standards relating to the legal status of prisoners prepared by a Committee of the American Bar Association, he stated that the revised rules closely parallel the rules presently adopted and used by the U.S. Bureau of Prisons. At the request of the court, the federal prison rules were furnished by the Department of Justice, and placed in the record.

### 4. CONTENTION OF THE PARTIES

■ Counsel for plaintiff-inmates preliminarily contend that since this court has approved the revised rules in accordance with the Fifth Circuit's 1974 opinion, and no appeal was taken therefrom by the prison officials or any other party litigant, the "law of the case" doctrine mandates that no changes can now properly be made, absent some exceptional circumstances or supervening changes in law. Admittedly, on the basis of the evidence presented by Mailly, no exceptional circumstances have developed since the original trial, nor does authority in controlling federal case law subsequent to our prior decision dictate different treatment of the disciplinary rules. As later stated, however, this argument is not dispositive since we are not concerned with conventional litigation between private persons, but rather with the ongoing operation of a state institution over which this federal district court has no control other than to insure that constitutional mandates, as opposed to mere operational changes in daily prison administration, are respected. The Department of Justice joins in the objection of plaintiff-inmates that due process requires an advance delineation of what prison infractions constitute major, serious or minor violations, and the offending inmate should know beforehand the punishment for one found guilty of any particular infraction of the prison's rules. It is therefore emphasized that vesting total discretion for classifying offenses in a free-world employee designated as a classification officer, after the misconduct has occurred, violates minimum standards of due process, both substantive and procedural, particularly where the classification officer himself may serve either as the disciplinary hearing officer or as a member of the disciplinary hearing committee, which reviews his initial classification. The ultimate position of the prison officials is that, so long as the revised rules do not offend constitutional principles, the State has the authority, from time to time, to make such revision of its rules governing inmates as experience may indicate to be beneficial or useful either to the institution, or to the inmate population, or to both. The immediate contention of the prison officials is they are handicapped in prison operations by inflexible, fixed categorization of offenses and corresponding punishment.

The "law of the case doctrine," as recently stated by the Fifth Circuit in *Schwartz v. NMS Industries, Inc.*, 575 F.2d 553 (1978) is "not an inexorable command," and is appropriate to the type of litigation for which it is suited:

The "law of the case" rule is based on the salutary and sound public policy *that litigation should come to an end.* It is predicated on the premise that "there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions or speculate of chances from changes in its members," and that it would be impossible for an appellate court "to perform its duties satisfactorily and efficiently" and expeditiously "if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal" thereof. (Emphasis added).

*Schwartz,* supra, quoting *White v. Murtha,* 377 F.2d 428, 431 (5 Cir. 1967).

It is evident that in the case sub judice this court has exercised since 1971 continuing jurisdiction over the Mississippi State Penitentiary from the standpoint of seeking to achieve compliance with constitutional principles mandated by the federal courts applicable to penal institutions; there have been many hearings, many orders and revised orders, several appeals, and the case, as a whole litigation, remains open with certain issues yet to be resolved. As respecting disciplinary rules, the law of the case doctrine could have no proper application, it seems quite clear to us, so long as the disciplinary rules sought to be revised by the state prison authorities do not infringe upon constitutional rights of inmates. To hold otherwise would be to view the rules which were originally authored by the prison administration, and ordered to be revised in certain respects by the Fifth Circuit, as cast in stone and not subject to change, regardless of what may be the experience in operating a penal institution. We are confident that the federal judiciary would not countenance any such judicial philosophy in its oversight of state institutions made necessary only because of imperatives of the United States Constitution.

More serious objections relate to whether the revised rules fail to satisfy minimal standards of due process, a constitutional requirement which, of course, is not inflexible and differs according to particular situations. It is no longer open to question that procedural rules of due process mandated for free citizens in an open society are substantially different from rules affecting disciplinary proceedings in a state prison. *Wolff,* supra, remains the authoritative decision in the area of what standards of due process prevail in a prison setting. Mr. Justice White, in *Wolff,* stated certain premises upon which to measure the essentials of due process in a penal environment.

It is against this background [of a prison setting] that disciplinary proceedings must be structured by prison authorities; and it is against this background that we must make our constitutional judgments, realizing that we are dealing with the maximum security institution as well as those where security considerations are not so paramount. The reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process. 418 U.S. at 562, 94 S.Ct. at 2978, 41 L.Ed.2d at 954.

*Wolff* thus summarized elements of procedural due process, which must be accorded prison inmates, as follows:

1. A written notice of the charge must be given to the inmate accused of a rules violation to inform him of the charge and enable him to marshal the facts and prepare his defense.

2. At least a brief period of time after giving of such notice, not less than 24 hours, must be allowed to the inmate charged for him to prepare for an appearance before the appropriate disciplinary hearing officer or committee.

3. A written statement by the fact-finders as to the evidence relied on and reasons taken for the disciplinary action must be compiled and made available.

4. The inmate facing a disciplinary proceeding must be allowed to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. *Wolff* pointed out ordinarily that the right to present evidence is basic to a fair hearing, but the restricted right to call witnesses in certain situations having obvious potential for disruption and for interference with swift

punishment may sometimes necessitate relaxation of this unusual procedure. In any case, prison officials must balance the inmate's interest in being subjected to serious sanctions against the legitimate needs of the prison, with sufficient discretion being accorded prison officials to keep the disciplinary hearing within reasonable limits. *Wolff* specifically recognized that the operation of a correctional institution was

> at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents. 418 U.S. at 566, 94 S.Ct. at 2980, 41 L.Ed.2d at 957.

5. Although *Wolff* did not grant the charged inmate to have the right to confront and cross-examine witnesses or to have counsel present, the Supreme Court did nevertheless require that in cases where the inmate involved is illiterate or the complexity of the issue renders it unlikely that the inmate facing a charge will be able to adequately present his case, he should be free to seek the aid of a fellow inmate, or, if that is forbidden, to have adequate substitute aid in the form of help from the prison's staff.

We emphasize that the foregoing five standards form the due process required which *Wolff* mandated as constitutionally necessary for penitentiary inmates charged with infraction of prison rules.

*Wolff* did, however, highlight that the disciplinary committee in the Nebraska prison case before it was not "left at large with unlimited discretion" but directed to meet daily and to operate within the principles stated in the controlling regulations of Nebraska's prison. Pertinent criteria in those regulations commanded that

"full consideration must be given to the causes for the adverse behavior, the setting and circumstances in which it occurred, the man's accountability, and the correctional treatment goals," as well as the direction that "disciplinary measures will be taken only at such times and to such degrees as are necessary to regulate and control a man's behavior within acceptable limits and will never be rendered capriciously or in the nature of retaliation or revenge." 418 U.S. p. 571, 94 S.Ct. p. 2982, 41 L.Ed.2d p. 959.

It was upon consideration of the foregoing directives that the Supreme Court held:

> We find no warrant in the record presented here for concluding that the Adjustment Committee presents such a hazard of arbitrary decisionmaking that it should be held violative of due process of law.

■ *Wolff* also is an authoritative statement that the deprivation of good time and "solitary confinement" are reserved for instances where only serious misbehavior has occurred. We take note that solitary confinement not exceeding thirty days in *Hutto v. Finney*, —— U.S. ——, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), under the peculiar facts of that recent case was held to be the maximum permissible punishment for a major rules violation. It goes without saying that minimum procedural safeguards are an absolute necessity against arbitrary determination of any factual predicate for serious deprivation to an inmate, such as loss of good time credit, solitary confinement or other significant charges of confinement detrimental to the inmate, as distinguished from the imposition of lesser penalties like the loss of privileges. *Wolff,* n.19, 418 U.S. 571, 94 S.Ct. 2963.

In addressing the due process question, we are greatly aided by the Policy Statement attached to the United States Bureau of Prisons rules on inmate discipline promulgated July 7, 1975, expressly incorporating standards for inmate disciplinary proceedings as prescribed by the Supreme Court in *Wolff v. McDonnell*. From our research, we have found no case which has

invalidated the federal prison rules as contravening *Wolff*. Therefore, these standards are highly persuasive in our judging the sufficiency of the revised prison rules proposed by the defendants. As it will appear from the several attached rules, the five basic elements mandated by *Wolff* have been adhered to. Moreover, the defendants' rules, like the federal rules, have set forth specific conduct constituting infractions, classifying them as prohibited acts, and not as major or minor rule violations. Also, like the defendants' revised rules, the United States Bureau of Prisons regulations leave to the institution's disciplinary committee the determination of what punishment may be appropriate under the particular circumstances. For example, by federal regulation, sanctions may be imposed on misconduct considered minor, or an inmate may be placed or retained in disciplinary segregation in accordance with established guidelines, or an inmate's good time may be withheld or forfeited, depending upon the facts of his particular situation, or the inmate may be transferred to another institution for disciplinary reasons. Additionally, the federal disciplinary committee is authorized to dismiss any charges where appropriate, order expungement of the record of charges where an inmate is determined to be innocent, suspend the execution of any sanction that may be imposed, and make recommendations to the United States Board of Parole for retardation or rescission of parole grants. Where criminal offenses have been committed by an inmate, the federal rules provide, as do the Mississippi revised rules, for investigation by law enforcement authorities looking to criminal prosecution.

The federal rules and the revised Mississippi rules in other respects are quite similar in that they both provide for review of actions by the disciplinary committee to higher authority within the prison administration. The factors to be considered on appeal are basically the same, i. e., whether the findings below are supported by substantial evidence.

Our critical attention is focused upon § V, which provides that the classification officer may designate an offense as major, serious or minor, and that in all cases of minor disciplinary violations the classification officer may serve in the dual capacity of a disciplinary hearing officer, who alone, is empowered to impose sanctions for minor offenses. Moreover, we encounter serious difficulty with the rule allowing the disciplinary hearing officer, in cases classified by him as major or serious, to serve as a member of the disciplinary committee. We believe that, especially in cases of more serious misconduct, the disciplinary committee should be composed wholly of disinterested members from various departments within the Department of Corrections, whose judgment will be totally uninfluenced by the classification officer. We find no counterpart for this type of procedure in the federal rules, and it borders upon allowing a classification officer having excessive discretion in the determination of infractions and punishment. We note in this regard that the federal rules provide: "Likewise, a staff member may not sit as a member of the Institution Discipline Committee if he played any significant part in having the charges referred to the Institution Discipline Committee for consideration." Section V(B), (C) and (D) of the revised rules are modified by the court to eliminate the extensive discretion vested in the classification officer. In all other respects, the revised rules are found to be and shall be approved.

Plaintiff-inmates also seek additional relief in the form of the expungement of records where full due process has not been accorded in disciplinary proceedings, as well as an order prohibiting the Department of Corrections from denying visiting privileges unless that privilege itself is abused. The former assertion, in our view, is unsupported by the facts reflected in the record in this cause and is inconsistent with the Supreme Court's ruling in *Wolff*. Moreover, the limitation to a maximum of four consecutive visiting days of which an inmate may be deprived is, in our view, a reasonable limitation on that privi-

lege which is extended by the Corrections Department.

The court reserves continuing jurisdiction of this cause to issue any further or supplemental orders necessary to implement or carry out this decision.

Let an order issue accordingly.

## EXHIBIT "A"

## DISCIPLINARY PROCEDURES FOR INMATES OF THE MISSISSIPPI STATE PENITENTIARY

### SECTION I

PURPOSE: Good order is the foundation and keystone of good society. Without rules and regulations, groups of people would find it extremely difficult to live together and maintain any semblance of proper respect for the privileges and property of others. Accordingly, the specific rules and regulations of the Mississippi Department of Corrections are based on fair and reasonable standards of behavior. Adherence to rules and regulations will ease your way through incarceration, will indicate a willingness to accept the laws of the State of Mississippi and may be a factor in determining custody classification and earned time class, participation in a work or earned release program or parole eligibility. Violations of rules and regulations will result in disciplinary action to reestablish discipline and to prevent or discourage further misconduct and disturbance.

### SECTION II

POLICY: The immediate aim and policy of discipline will be to establish good order and conduct and to seek a carry-over value by establishing standards which the offender will maintain after release. Discipline and associated corrective disciplinary action will be objective, consistent, reasonable, firm and prompt, while also being appropriately varied in terms of an understanding of the personalities of the inmates concerned.

### SECTION III

RESPONSIBILITY: The Commissioner of the Department of Corrections and the Warden of the Mississippi State Penitentiary are responsible for the maintenance of good order and discipline within the population of the Mississippi State Penitentiary. It is essential that this responsibility be shared by all employees and personnel of the Mississippi State Penitentiary and the Department of Corrections. Disciplinary and punitive action is the responsibility of each Associate Warden, his designee or the Disciplinary Committee.

### SECTION IV

APPLICABILITY: This directive is applicable to all inmates incarcerated in the Mississippi State Penitentiary or to any other prisoner under the administrative control of the Mississippi Department of Corrections.

### SECTION V

DEFINITIONS AND INTENT: For this directive the following definitions as amplified apply wherever like words or phrases appear.

A.  *Charge Sheet*: A form used to officially notify the accused that he/she has been charged with committing a violation, the nature and elements of the violation, the intent to punish, and the rights entitled the accused to make a full presentation in defense, mitigation, or extenuation.

B.  *Classification Officer*: An impartial staff officer, Major or above, assigned by either the Warden or a Program Associate Warden to classify Rules Violation Reports as either Minor, Serious or Major. When classifying a violation report, the Classification Officer will be guided in his decision by the seriousness of the offense reported, the punishment that can be imposed and classification processing as set forth in these procedures. The Classification Officer may <u>not</u>* serve as the Disciplinary

* Modifications required by court indicated by underlining.

Hearing Officer or serve as a member of the Disciplinary Committee.

C. *Disciplinary Hearing Officer*: An impartial staff officer, <u>other than the Classification Officer</u>, assigned by either the Warden or a Program Associate Warden to conduct disciplinary hearings involving Minor disciplinary violations and will award appropriate disciplinary action as necessary.

D. *Disciplinary Committee*: An impartial committee appointed by either the Warden or Program Associate Warden to conduct disciplinary hearings; <u>provided however that the Classification Officer may not also serve on the Disciplinary Committee during his tenure as such nor may he so serve on said committee in review or consideration of Rules Violation Reports which he has initially classified.</u> The Disciplinary Committee will be comprised of five (5) or more selected members from various departments within the Department of Corrections. The reporting employee, accuser, and witnesses will be excluded from this body. To constitute a disciplinary hearing quorum, at least three (3) assigned members must be present.

E. *Investigating Employee*: A designated employee who will conduct impartial and unbiased investigations to assist the Disciplinary Committee, Hearing Officer, or the accused in their search for truth, facts and justice.

F. *Rules Violation Report (RVR)*: A reporting form that will include the violation charge, essential facts supporting the alleged violation, processing action taken, findings, and the disciplinary action taken, if any. The form will be so configured that proper distribution can be made with the original becoming part of the inmate's permanent Department of Corrections record. When referring violations for disciplinary action, the Rules Violation Report must be used.

G. *Rules Violation Report Auditor*: An impartial staff officer (Associate Warden level) assigned by the Warden to audit all Rules Violation Reports to insure that each violation report has been processed correctly and in accordance with the procedures set forth in this directive. The auditor will also insure that a permanent record of all RVR reports issued is maintained indicating an RVR reference number, housing unit involved, the offender's name and MSP number, rule violated, RVR date, Classification, date referred for hearing, date hearing process completed, findings, audit date, appeal date and date forwarded to the record office for filing in the offender's record. The auditor does not have the authority to void, increase or mitigate an imposed punishment through audit but he does have the authority to administratively void a Rules Violation Report if the RVR was not processed in accordance with the procedures as set forth in this directive; and to void or adjust any punishment awarded that is either in excess of the punishment authorized or is not an authorized disposition for the RVR's classification.

H. *Violation*: An act or omission of an act contrary to the rules and regulations of the Mississippi State Penitentiary, Laws of the State of Mississippi or the United States that has as its elements one or more of the following: Violence toward persons or property; Escape (escape includes not only leaving the institution but also being "out of place" at any time—the latter may be tantamount to attempting to escape); Riot or inciting a riot; Contemptible disregard for the authority of the Penitentiary or its agents; Introduction and/or possession of contraband; Theft of property; Serious disorderly conduct causing disruption of institution activities; Misuse of mail privileges or attempting to use the mail for fraudulent purposes; or an act of non-violence that presents a hazard to the safety, welfare, and integrity of the community.

### SECTION VI

CATEGORIES OF VIOLATIONS: A violation of the existing rules and regulations of

the Mississippi Department of Corrections may be classified into one of three categories:

A. *Minor Violation* : Are acts of nonconformance to the basic rules of conduct necessary to the orderly operation of the institution.

B. *Serious Violations* : When a violation or offense appears to merit a greater punishment than authorized for a Minor Violation (but is not felonious in nature) then the offense will be categorized as a Serious Violation.

C. *Major Violations* : When a violation or offense is felonious in nature, the offense will be categorized as a Major Violation and referred to the County District Attorney in which the offense occurred for possible prosecution.

## SECTION VII

RESTRICTIONS: Disciplinary action shall not be capricious or in the nature of retaliation or revenge. Corporal punishment of any kind is strictly prohibited. No employee may serve as Disciplinary Hearing Officer in any matter in which he is the accuser, witness, or is otherwise so involved with the incident that he may not render a fair and impartial judgment herein.

## SECTION VIII

CLASSIFICATION OF RULES VIOLATION REPORTS:

A. When a Rules Violation Report is prepared for disciplinary action, it will be forwarded to the Classification Officer within 72 hours (3 working days) following the violation report by any employee having knowledge of the violation. Each report will be examined by a Classification Officer and classified as Minor, Serious, or Major according to the seriousness of the misbehavior reported. The Classification Officer will then forward the report to the Disciplinary Hearing Officer or to the Disciplinary Committee for hearing.

B. If the Disciplinary Hearing Officer determines at any time through new information or facts that the matter is of a more serious nature than initially determined, he may terminate his handling of the matter and refer the matter to a higher level hearing.

C. When a Rules Violation Report is classified as a Serious charge, the matter will be referred to the Disciplinary Committee. An inmate representative or Investigating Employee may be appointed if deemed necessary by the Disciplinary Committee, even if not requested by the offender.

## SECTION IX

HOUSING PENDING DISCIPLINARY ACTION: An offender against whom a Rules Violation Report is filed will remain in his or her present status unless additional control is needed for the protection of staff, other offenders, the accused offender, or as a security measure. The Watch Commander or ranking officer on watch may order any offender placed into segregated status if he deems additional control necessary. Such action must be reported in writing to the full Classification Committee without undue delay. The Classification Committee must approve or disapprove such action in writing within two (2) working days after receiving such notification.

## SECTION X

NOTIFICATION OF ACCUSED:

A. *Rules Violation Report* : When an inmate commits an act which is in violation of the rules and regulations as defined in Paragraph H, Section V of this procedure, he will be issued a Rules Violation Report. The reporting employee will indicate on the report the following:

1. The offender's name, MSP number and unit.
2. Rule violated.
3. Date and time of violation.
4. The specific act committed and the circumstances and details of the incident/violation being reported.
5. The identity of the reporting employee (signature and title).

The reporting employee will see that the offender and the Classification Officer each receive copies of the RVR within 72 hours following the violation.

B. *Charge Sheet*: The Classification Officer, after receiving the Rules Violation Report and other related material, will officially notify the accused offender of the charge placed against him and the Classification of the charge by serving him with a Charge Sheet. The Charge Sheet notification shall include the following:

1. Classification of the charge (Minor, Serious, Major).
2. Specification of the regulation allegedly violated and essential facts supporting the alleged violation.
3. Time, date and place of the offense.
4. Tentative date or time frame in which disciplinary hearing will be held.
5. Right to refuse punishment if violation classified as a Minor violation.
6. Right to have an investigating employee if violation is classified as a Serious violation.
7. Right to call witnesses if violation classified as a Serious violation.
8. Process to be followed if violation classified as a Major violation.

C. *Miranda Warnings*: In all disciplinary proceedings charging an offender with the violation of penitentiary rule or regulation which may be punishable by imprisonment under the criminal laws of the State of Mississippi, the offender so charged shall, in any case where he is not provided with full *Miranda* warnings, including an opportunity to be represented by counsel, be informed at the outset of the administrative hearing that any statements made or information supplied by him in the course of the disciplinary proceeding shall not be used against him in any subsequent criminal prosecution which may be based upon the facts revealed at the disciplinary proceeding.

## SECTION XI

MINOR VIOLATIONS:

A. Misconduct of a Minor nature may be handled by corrective counseling, advising the inmate regarding acceptable behavior, or writing a Rules Violation Report on the act of misconduct. With respect to the Minor Violation charge the Disciplinary Hearing Officer may dispose of the charge himself (or may delegate the responsibility to a designated Program Administrator (COII or above, but not an Acting COII). The Disciplinary Hearing Officer or his delegate will interview the offender involved as soon as possible but not later than five (5) working days after the Disciplinary Hearing Officer receives the Rules Violation Report. He will determine whether further information is needed and if so obtain it and after ascertaining all facts may make any one or more of the following dispositions:

1. Dismissal of the matter if the facts do not support the charge.
2. Counseling, with or without a reprimand.
3. Assignment of extra duty, not to exceed sixteen (16) hours, to be performed over a period not to exceed eight (8) days.*
4. Temporary suspension of privileges, not to exceed five (5) days.
5. Two (2) weekend or holiday lock-ups.**
6. Confinement to quarters for a period of not more than five (5) days.*
7. Loss of two (2) visiting days; provided, however, no inmate shall lose more than four (4) consecutive visiting days at any one time for multiple Rule Violation Reports.
8. Placing a hold on the inmate's trust fund where there is property damage or loss and the offender refuses to sign a trust withdrawal slip to compensate for the damage or loss. Removal of such a hold can only be accomplished via a request to the Program Associate Warden. If the re-

quest is granted the money will be released.

9. Recommend loss of five (5) days earned time and/or reduction of a maximum of one step in class subject to final approval by the Classification Committee.

* Cannot award a combination of items 3 and 6 above.
** Weekends will be consecutive and if lockup falls on visiting day, visitation privileges are automatically forfeited for that day.

B. *Presence of Accused at Hearing*: The accused must be present at the hearing concerning his/her misconduct unless he or she refused to appear and use of force would be required to enforce attendance. No absentia hearing will be held when the inmate is mentally disturbed to such an extent that meaningful participation would be precluded or when the inmate is an escapee-at-large.

C. *Witnesses*: The offender facing minor disciplinary action will ordinarily not be allowed to call witnesses, but he may present any relevant documentary evidence including written statements of witnesses. However, if the Disciplinary Hearing Officer feels that live testimony is required to insure a just decision, he may afford the offender the qualified right to call witnesses subject to the same limitations as set out in Section XII–D below. If the accused offender disagrees with the Disciplinary Hearing Officer's decision concerning the calling of witnesses, he may exercise his right to refuse punishment in accordance with the provisions of Section XI–G below.

D. *Assistance*: Where the accused is functionally illiterate or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence in his case, the accused shall, in preparation of his defense to the disciplinary charges, be free to seek the assistance of a fellow inmate, or else be furnished adequate substitute assistance in the form of help from the penitentiary staff or from a competent inmate designated by the staff.

E. *Hearing Decision*: The Disciplinary Hearing Officer may delay any decision in order to obtain further information. When the Disciplinary Hearing Officer is satisfied that the relevant information has been obtained, a determination must be made whether the inmate did the act which was reported, and if it is decided the inmate did the reported act, what disposition will be made of the matter. The Hearing Officer must not find the offender guilty as charged unless persuaded by a preponderance of the information presented at the hearing. The Hearing Officer must document on the violation report the basis/facts for his decision.

F. *Notification of Decision*: As soon as practicable, but not later than 72 hours after the conclusion of the hearing, the Disciplinary Hearing Officer shall make a written statement of the facts setting forth the evidence relied upon and the reasons for the disciplinary action taken to include statements of and names of witnesses when practical. A copy of this written statement shall be made available to the offender.

G. *Right to Refuse Punishment*: An offender of the Mississippi State Penitentiary when offered punishment by the Disciplinary Hearing Officer or the designated hearing administrator under the provisions of this section has the right to refuse to accept punishment thereunder and request in writing that the violation be heard by the Disciplinary Committee. The offender will be informed prior to the hearing of his right to refuse punishment. A refusal to accept punishment must be so stated by the offender prior to or before any evidence is heard or punishment awarded.

H. *Appeal*: The right to appeal punishment administered hereunder is absolute. Section XIII sets forth the guidelines to be followed.

SECTION XII

SERIOUS VIOLATIONS: When the Disciplinary/Classification Officer deems an of-

fense or an act to be of a substantial nature and meriting punishment greater than that authorized for a "Minor Offense," he will classify the violation as Serious. The Classification Officer will immediately refer the violation report to the Chairman of the appointed Disciplinary Committee for Disciplinary Committee action. The Disciplinary Committee will conduct the disciplinary hearing as soon as possible but not later than ten (10) working days after their receipt of the Rules Violation Report unless additional time shall be required to complete investigations, obtain statements of witnesses, etc.

A. Upon receiving the violation report, the senior member of the committee will:

1. Insure that the accused has been properly notified of the charges placed against him in accordance with Section X hereunder.

2. Review the violation, charges, and other related material to determine if an Investigating Employee or investigator is needed, and if so, effect the necessary appointment.

3. Set a date, time, and place for the hearing and insure that a committee quorum is present when convened.

4. Insure the hearing is conducted in accordance with the procedures contained in this directive.

5. Insure that the committee's final decision is based solely on evidence presented at the hearing and rendered in writing stating factual basis for the decision.

B. *Investigating Employee*: When an Investigating Employee is requested by the Disciplinary Committee, or by the accused, the following procedure will be followed:

1. The Investigating Employee will be chosen from a designated group of employees of this institution. Upon objection by the offender to the Investigating Employee who is appointed, the Disciplinary Committee may appoint a new investigator. No officer or employee who may have witnessed, reported, or is a member of the Disciplinary Committee, which will consider the misconduct being acted upon, shall be designated.

2. The Investigating Employee will interview the accused, the reporting officer, and any other persons whom he considers may have information pertaining to the act or circumstances presented in the Rules Violation Report. He is to provide the committee with factual information only. He may summarize his factual findings but he should not reach or suggest any conclusion concerning the offender's guilt or innocence. He will have access to all information concerning the inmate's act of misbehavior and will receive the cooperation from all institutional personnel in his investigation. He is to act as a neutral and unbiased investigator seeking truth and fairness. The Investigating Employee shall be subject to call to appear before the committee at the hearing.

3. When an accused offender is interviewed by the Investigating Employee, he (the offender) will be informed of the following rights:

a. That he has the right to remain silent.

b. That anything he says can and will be used against him in the disciplinary proceedings.

4. The Investigating Employee will report his factual findings in writing (typed) to the Disciplinary Committee.

C. *Presence of Accused at Hearing*: The accused must be present at his/her hearing concerning his/her misconduct unless he or she refused to appear and the use of force would be required to insure attendance. No absentia hearing will be held when the inmate is mentally disturbed to such an extent that meaningful participation would be precluded, or when the inmate is an escapee-at-large.

D. *Witnesses:*

1. The offender charged with a Serious offense shall be allowed to present

documentary evidence and call witnesses to his/her defense at the hearing unless:

a. The Disciplinary Hearing Committee certifies in writing and with particularity that permitting such offender to do so will be unduly hazardous to penitentiary safety and security.

b. Pre-investigation or pertinent documentation indicates that the called witness was not present when the violation occurred or has no knowledge of the incident.

c. The called witness does not desire to appear. In such cases the called witness may submit a sworn statement in the accused's behalf or testify privately. If the called witness does not wish to appear or submit a sworn statement in the accused's behalf, the accused must be notified of the witness' decision in writing.

d. The called witness is not readily available for the hearing by virtue of his/her being away from the penitentiary or the location where the Rules Violation Report is being heard. This would include hospitalization, presence at a satellite facility, release or transfer from the penitentiary subsequent to the violation but prior to the hearing. In this event a transcribed statement may be obtained by the Investigating Employee over the telephone and used in place of the witness' personal appearance.

e. Pre-investigation discloses that the called witness' testimony would be repetitive of that of other called witnesses. In such cases, the accused shall be permitted to select not more than two (2) called witnesses not otherwise disqualified from appearing who are best able to testify in the accused's behalf.

f. The accused shall have failed to request the appearance of a witness by not noting the witness' name in the appropriate blanks on the Charge Sheet or otherwise requesting the witness' appearance in writing to the Disciplinary Hearing Committee within seventy-two (72) hours after his receipt of the Charge Sheet.

2. Whenever an offender is prohibited from calling a witness, the Disciplinary Hearing Committee shall notify the offender in writing and state the reason for such decision.

3. At the discretion of the committee, private testimony may be taken whenever it is believed that revealing the identity of a witness may subject him to personal danger.

4. The Investigating Employee may submit signed original copies of his findings, including any statements which he may have obtained, in lieu of attending the hearing in person. However, he shall be subject to call by the committee at its discretion.

5. Questions may be asked of any witness called to the meeting by committee members, the Investigating Employee, or the accused inmate. The Committee Chairman will exercise control of all questioning to prevent lack of relevancy, harassment, abuse, or repetition.

E. *Assistance*: Where the accused is functionally illiterate or where the complexity of the issue makes it unlikely that the inmate will be able, adequately, to collect and present evidence in his case, the accused shall, in preparation of his defense to the disciplinary charges, be free to seek the assistance of a fellow inmate, or else be furnished adequate substitute assistance in the form of help from the penitentiary staff or from a competent inmate designated by the staff.

F. *Delay of Decision*: The Disciplinary Committee may delay any decision in order to obtain further information. When the Disciplinary Committee is satisfied that the relevant information has been obtained, a timely determination must be made whether the inmate

did the act which was reported, and if it is decided that the inmate did the reported act, what disposition will be made of the matter. The Disciplinary Committee must not find the accused guilty as charged unless persuaded by a preponderance of the information presented at the hearing.

G. *Penalties and Decisions That May Be Imposed*: The Disciplinary Committee, after hearing the charge and considering all contributing factors, may make any one or more of the following dispositions:

1. Dismissal of the matter if the facts do not support the charge.

2. Reclassify the charge as either a Major or Minor violation and refer the charge appropriately for disposition under the new classification.

3. Any disposition authorized to be administered by the Disciplinary Hearing Officer for a Minor violation. In addition, he may impose any of the following:

   a. Assignment of extra duty, not to exceed 24 hours, to be performed over a period not to exceed twelve (12) days.

   b. Recommend reclassification and reassignment.

   c. Loss of "Earned Time," or any part thereof, in accordance with § 47–5–127 and § 47–5–139 of the Miss.Code of 1972.

   d. Assignment to adjustment center or segregation (isolation) for a period not to exceed twenty (20) days, provided, however, an offender may not serve more than forty (40) consecutive days if found guilty of multiple offenses. During such period visitation, canteen, inmate telephone, movie and radio privileges will be suspended. Inmates so confined will be allowed to show at least once every five (5) days.

   e. Complete or partial suspension of any punishment imposed not to exceed six (6) months.

H. *Notification of Decision*: As soon as practicable after the conclusion of the hearing, but not later than four (4) working days, the Disciplinary Committee shall make a written statement of fact setting forth the evidence relied upon and the reasons for the disciplinary action taken. A copy of this written statement shall be made available to the accused. In the event that revelation of certain evidence upon which the Disciplinary Committee relies will endanger prison security or the safety of inmates or other personnel, such evidence may, with the express approval of the Warden, be omitted from the written statement. In any case where such omission is deemed necessary by the Disciplinary Committee, the written statement shall contain the fact of the omission and the basis therefor.

I. *Time Spend in Segregation*: Time spent in segregation pending the hearing will be credited toward any segregation sentence imposed unless there is good cause not to grant credit. The reasons not to grant credit will be set forth in writing.

J. *Appeal*: The accused will be informed in writing of his right to appeal any punishment administered hereunder in accordance with the provisions of Section XIII.

## SECTION XIII

APPEAL: Any offender punished under the authority set forth who considers his punishment unjust or disproportionate to the offense may appeal to the next higher authority; to the Disciplinary Committee in the case of punishment administered by the Disciplinary Hearing Officer; to the Warden of the Mississippi State Penitentiary in the event the punishment was administered by the Disciplinary Committee. The appeal shall be promptly prepared and forwarded to the appellate authority; however, appeals not made within a reasonable time may be rejected by the reviewing authority. In the absence of unusual circumstances, an appeal made more than fifteen (15) days

after punishment was imposed may be considered as not having been made within a reasonable time. Appeals must be made in writing and must include the appellant's reasons for regarding the punishment as unjust or disproportionate. Before acting on an appeal, the Warden may refer the case to a disinterested staff member on the associate or administrative level (but who does not function as a Program Administrator), who will review the case for legal sufficiency and make recommendations in writing to the Warden. When a case is referred to a reviewing authority for advice, he is not limited to an examination of just written matter comprising the record of the proceedings and may make any inquiries he determines to be desirable. In acting upon an appeal, the Warden may remit, mitigate, suspend, or set aside in whole or in part the punishment imposed. After having considered an appeal, the Warden will transmit to the appellant, through channels, a written statement of his disposition of the case. All appeals will be acted upon within a reasonable period of time, not to exceed ten working days.

## SECTION XIV

MAJOR VIOLATIONS:

A. A Major violation, always being felonious in nature, will be referred by the Warden to the County District Attorney for possible prosecution. The District Attorney will be requested to advise the institution within twenty (20) working days whether he will present the violation to the Grand Jury. If the District Attorney advises that he will not present the violation to the Grand Jury, the violation will be reclassified as a Serious violation and processed by the Disciplinary Committee as a Serious violation. In all cases, institutional disciplinary consideration of the matter will be postponed until receipt of the District Attorney's decision of the Grand Jury's decision or the Trial Court's disposition of the case. The District Attorney's or the Grand Jury's decision or the Trial Court's disposition

will be entered on the Rules Violation Report.

B. *Housing During Criminal Prosecution*: Any offender transferred to specialized housing pending disposition of a Major violation must be referred to the full Classification Committee without undue delay. The Classification Committee must approve or disapprove such action in writing within one (1) working day after receiving notification to determine if the offender will be returned to his regular program, admitted to a modified program, or will be retained in a specialized housing unit pending final disposition by the District Attorney. In reaching its conclusion, the Classification Committee must consider the nature of the charges pending against the offender in the criminal proceedings, and will assume the information stated in the report forwarded to the District Attorney to be true. The Classification Committee should make every effort to place the offender in as normal a program as possible under the circumstances. Continued retention in a specialized housing unit pending disposition of the charges by the District Attorney is warranted only when:

1. The offender has a record of assaultive or displays imminently assaultive behavior.
2. The offender presents an escape risk of unusual persistence.
3. The offender has requested, or appears to require protective custody.
4. A staff psychiatrist prescribes segregation based upon the offender's mental condition.
5. The safety and security of the institution will be threatened if the offender is not placed in restricted housing.

Normal Classification Committee procedures will be followed, except as follows: The offender will be advised that he does not need to appear before the committee. If he chooses to appear before the committee, he will be advised that he need make no statement and that the commit-

tee will ask no questions concerning the pending criminal charges. He will be advised that the committee, when determining appropriate housing pending disposition of the charge, will consider volunteered information presented as assistance in making a suitable housing determination. However, he will be informed that any information provided in regard to the alleged offense committed may be used against him in the forthcoming court trial proceeding.

is described in a single RVR, the offender's record will show clearly the violations that were not proven.

B. When an offender is found not guilty of committing a rule or regulation violation the RVR will not be placed in the offender's permanent Department of Corrections record but may be placed in a separate file and used for statistical or research purposes providing the identity of the offender is not released or used in any detrimental way against the concerned offender.

## SECTION XV

RULE VIOLATION REPORT FILING: Rule Violation Reports (RVR) will be filed as follows:

A. When an offender is found guilty of committing a rule or regulation violation the original copy of the RVR, with all supporting documentation attached, will be placed in the offender's permanent Department of Corrections record; but when the offender is found guilty of only some part of the rule or regulation violation that he or she was originally charged with in connection with a single incident, and where that incident

## SECTION XVI

CHANGES AND RECOMMENDATIONS: These disciplinary procedures will not be deviated from for any reason without the specific approval of the Warden. When any such deviation is authorized, it will be documented and become part of the Violation Report. Meaningful recommended changes to these procedures are solicited. Recommendations must be in writing indicating the recommended change(s) and the reason(s) therefor. These procedures will also be reviewed periodically for soundness and validity and to incorporate any changes deemed necessary.

| OLD RULES/PROHIBITED ACTS | PROHIBITED ACTS AND RULE VIOLATION NUMBERS | |
|---|---|---|
| 201–1  201–2 | 9–2–1 | Killing or assaulting any person. |
| 201–3 | 9–2–2 | Fighting with another person except in self-defense. |
| 201–4 | 9–2–3 | Extortion, blackmail, demanding or receiving money or anything of value in return for protection from others to avoid bodily harm or under threat of informing. |
| 201–5  202–25 | 9–2–4 | Engaging in sexual acts with others or indecent exposure. |
| 201–6  201–7  201–22 | 9–2–5 | Escape, attempting to escape or planning escape. |
| 201–8 | 9–2–6 | Setting a fire. |
| 201–9  202–27 | 9–2–7 | Willfully or maliciously destroying, altering or damaging state property or the property of others. |
| 201–10 | 9–2–8 | Stealing (theft). |
| 201–11  201–12  201–13 | 9–2–9 | Unauthorized possession of the following: gun, firearm, weapon, sharpened instrument, knife, tool, or any explosive or ammunition, or possession, or introduction, or use of any narcotics, narcotic paraphernalia, drugs, or intoxicants not prescribed for the individual by the medical staff. |
| 201–14  201–15 | 9–2–10 | Rioting or encouraging others to riot. |

**596**

| OLD RULES/PROHIBITED ACTS | | PROHIBITED ACTS AND RULE VIOLATION NUMBERS | |
|---|---|---|---|
| 201–16 | 202–44 | 9–2–11 | Engaging in or encouraging any group demonstration or conduct which disrupts or interferes with the security or orderly running of the Mississippi State Penitentiary. |
| 201–18 | | 9–2–12 | Making intoxicants or being intoxicated. |
| 201–19 | 201–20 | 9–2–13 | Preparing or conducting a gambling pool or gambling. |
| 201–21 | | 9–2–14 | Giving or offering any staff member a bribe or anything of value. |
| 202–23 | | 9–2–15 | Threatening another in any way with bodily harm or with any offense against his person or his property. |
| 202–29 | 202–28 | 9–2–16 | Unauthorized possession of money, bank checks, money orders, blank checks, foreign currency and/or medication. |
| 202–31 | 202–26 | 9–2–17 | Possessing any officer's or staff member's clothing unless specifically authorized or possession of free world trousers unless properly configured as prison clothing. |
| 202–32 | 202–33 | 9–2–18 | Refusing to work or encouraging others to refuse to work or participation in work stoppage. |
| 202–34 | | 9–2–19 | Refusing to obey the order of any staff member. |
| 202–36 | | 9–2–20 | Malingering or feigning an illness. |
| 202–38 | | 9–2–21 | Lying or providing a false statement to any staff member. |
| 202–39 | | 9–2–22 | Being in an unauthorized area without official permission. |
| 202–40 | 202–41 | 9–2–23 | Willfully using any equipment or machinery, or vehicle which is not authorized or is contrary to instructions or posted facility standards or using in such a manner as to abuse the equipment or machinery or endanger the lives of others. |
| 202–42 | 202–43 | 9–2–24 | Failing to stand count or interfering with the taking of the count. |
| 202–45 | | 9–2–25 | Failure to follow safety or sanitation regulations including smoking where prohibited. |
| 202–46 | | 9–2–26 | Tattooing or self-mutilation. |
| 202–47 | 202–48 | 9–2–27 | Unauthorized use of telephone or telephone privileges or violation of mail or visiting privileges, or fraudulent use of the mail or postage stamps for personal gain. |
| 201–17 | | 9–2–28 | Counterfeiting, forging, altering, or unauthorized reproduction of any article of identification, money, negotiable instrument, security, or official paper. |
| 202–49 | | 9–2–29 | Giving money or anything of value to, or accepting money or anything of value from another inmate, a member of his family, or his friends without prior written approval. |
| 202–50 | | 9–2–30 | Unauthorized possession of any eating or cooking utensil. |
| 202–37 | | 9–2–31 | Using abusive or obscene language. |

| OLD RULES/PROHIBITED ACTS | | PROHIBITED ACTS AND RULE VIOLATION NUMBERS | |
|---|---|---|---|
| 202–37 | 201–16 | 9–2–32 | Being loud, boisterous or disorderly to the extent the din disturbs the tranquility of the institution. |
| 202–34 | | 9–2–33 | Failure to conform to grooming standards. |
| 202–48 | | 9–2–34 | Unauthorized contacts with the public. |
| 202–51 | 201–22 | 9–2–35 | Attempting to commit any of the above offenses, aiding another person to commit any of the above offenses, and making plans to commit any of the above offenses shall be considered the same as a commission of the offense itself. |

