730 F.2d 1002
 Bennie STEWART, Jr., Individually and on behalf of all
others similarly situated, Plaintiff-Appellant,
v.
Morris L. THIGPEN, Commissioner, Mississippi Department of
Corrections, et al., Defendants-Appellees.
 No. 83-4329.
 United States Court of Appeals,
Fifth Circuit.
 April 30, 1984.
 
 Michael T. Shareef, N. MS Rural Legal Serv., Walterine Langford, Clarksdale, Miss., for plaintiff-appellant.
 W.V. Westbrook, III, Asst. Atty. Gen., Jackson, Miss., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Mississippi.
 Before POLITZ, RANDALL and JOLLY, Circuit Judges.
 E. GRADY JOLLY, Circuit Judge:
 
 
 1
 Bennie Stewart, former inmate at the Mississippi State Penitentiary at Parchman, brought this section 1983 action for damages against several officers and employees of the penitentiary who allegedly deprived him of his constitutional rights by improperly processing a disciplinary incident in which he was involved in 1980. Stewart also alleged violations of state tort law. The district court granted the defendants' motion for directed verdict on Stewart's claims against the state commissioner of corrections, prison warden, deputy warden, and disciplinary committee. The jury found for the defendants on the remaining claims. Stewart appeals both the court's granting of a directed verdict and the jury's verdict, claiming neither is supported by substantial evidence. We hold that Stewart's failure to move for a directed verdict in his own behalf at trial precludes his pursuing his claims on appeal against all defendants except the ones which the court allowed to go to the jury. We also hold that for these defendants, sufficient evidence exists in the record to support the jury's verdict.
 
 I.
 
 2
 Bennie Stewart, now free on parole, was a class C prisoner at the Mississippi State Penitentiary at the time the incidents giving rise to this lawsuit occurred. Penitentiary regulations require that class C prisoners be supervised at all times by prison personnel.
 
 
 3
 On the morning of November 26, 1980, while standing in the breakfast line, Stewart began to complain loudly and profanely about the constant presence of prison guards. Corrections Officer Larry Harris, present that morning, had warned Stewart several times previously that such disruptive behavior was unacceptable. Harris felt that on the morning of November 26, Stewart was trying to incite bad feelings among fellow inmates toward the corrections officers. Thus, Harris told Stewart to be quiet, and when Stewart continued to complain, Harris issued Stewart a formal reprimand. He removed Stewart from the community dining area to his cell, where Stewart remained for more than an hour.
 
 
 4
 Later that day, pursuant to prison rules and procedures approved in Gates v. Collier, 454 F.Supp. 579, 586 (1978), aff'd, 606 F.2d 115 (5th Cir.1979), Harris issued Stewart a Rules Violation Report specifying the unacceptable behavior and the rule it violated. The report alleged that Stewart had been loud and boisterous in the dining hall and had refused to be quiet when ordered to do so. Simultaneously, Harris completed an incident report recounting the events of the morning in some detail.
 
 
 5
 Harris then forwarded the report forms to the classifications officer, who was to classify the offense as "minor" or "serious." The court-approved prison rules allow a single disciplinary hearing officer to review minor offenses, and limit the amount and type of punishment that officer may impose. A full disciplinary committee reviews all serious offenses, and minor offenses as well if the prisoner requests in writing that it do so. As set forth in the prison handbook, the inmate has procedural protections before the committee that he does not have before a hearing officer, including the right to call witnesses, to have the matter investigated by a prison employee, and to present written evidence. The full committee, however, may impose any punishment the rules authorize it to impose, regardless of the classification of the offense. The classification officer classified Stewart's November 26 offense as minor.
 
 
 6
 On December 4, Corrections Officer Jerry Upton called Stewart to his office to issue him a formal charge sheet as required by the prison rules. The charge sheet informs the inmate of the classification of his charge, of his right to have minor violations reviewed by a full committee, and of the prison rule requiring that he submit a written request for a full committee hearing if the classification officer classified the offense as minor. The charge sheet explicitly informs the inmate that a full committee reviewing a minor charge may impose any penalty it is authorized to impose, even if the offense is minor and one for which the prison rules circumscribe the punishment a single disciplinary officer may impose. The charge sheet further informs the inmate that he may have a prison employee investigate the incident, but that he must request the investigation in writing. It provides a space for the inmate to sign indicating that he wants a prison employee to investigate the incident. Similarly, the form provides a space for the inmate to indicate by signing that he wishes to call witnesses to testify at the committee hearing. It provides a space for listing potential witnesses. Finally, the form has a space for the inmate to indicate by signature that he has read the charge sheet and received a copy of it. Stewart signed the charge sheet, indicating that he wanted the incident investigated, indicating that he intended to call four witnesses, whose names he inserted in the spaces provided, and indicating that he read and received a copy of the charge sheet.
 
 
 7
 At the disciplinary hearing, Stewart's defense was that he had been falsely accused and that Harris and Upton brought the rules violation charges against him because of personal animosity towards him. Stewart requested that the prison log for November 26 be brought into evidence. All incidents occurring at the prison should be noted in the log, and Stewart wanted to support his false accusation defense by showing that the alleged incident of misbehavior was not noted in the log. The committee, however, refused to consider the prison log because the issue before it was whether Stewart misbehaved, and not whether the incident had been properly noted in the log. Although Stewart's witnesses declined to appear on his behalf, as prison rules and regulations give them a right to do, one witness provided a written statement that corroborated Stewart's version of the facts. This statement and Stewart's own testimony comprised all the evidence supporting Stewart's case.
 
 
 8
 After considering the Rules Violation Report, the Incident Report, the testimony of Stewart and of Officer Harris, the written statement of Stewart's witness, and the fact that Stewart's witnesses declined to appear personally, the committee found that Stewart had violated the prison rule forbidding loud and boisterous conduct in the dining hall. It recommended a sentence of loss of sixty days earned time and ten days in isolation. This sentence is greater than allowed for a minor offense heard before a single disciplinary officer.
 
 
 9
 Section 47-5-104 of the Mississippi Code requires that a classification committee review all decisions of the disciplinary committee which subject an offender to demotion or deprivation of earned time. The classification committee, therefore, reviewed Stewart's sentence, and upheld the disciplinary committee's decision. As allowed by the approved prison rules, Stewart appealed the disciplinary committee's decision to the prison warden. The warden had the deputy warden review the hearing record, and on the deputy warden's recommendation, affirmed the disciplinary committee.
 
 
 10
 Stewart subsequently filed this section 1983 lawsuit in federal district court, requesting declaratory and injunctive relief, as well as compensatory and punitive damages, for alleged violations of his constitutional rights. The district court issued an order dismissing several of Stewart's claims before trial by adopting the recommendations of a federal magistrate. Stewart does not challenge this order. Stewart then was paroled, thereby mooting his claims for declaratory and injunctive relief. His remaining claims for damages were tried before a jury. The court granted the defendants' motion for directed verdicts against Stewart on most of his claims. The jury heard evidence on his remaining claims that Officer Harris falsely accused him, that Officer Upton failed to inform him of the consequences of requesting a full committee hearing, and that both officers harbored personal animosity toward him. It returned verdicts unfavorable to Stewart on all of them. Stewart appeals.
 
 II.
 
 11
 We begin our analysis by noting that the role of the federal courts in reviewing prison proceedings is a narrow one. "The Supreme Court has articulated for the federal courts a policy of minimum intrusion into the affairs of state prison administration; state prison officials enjoy wide discretion in the operation of state penal institutions." Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Williams v. Edwards, 547 F.2d 1206, 1212 (5th Cir.1977). In reviewing prison administrative actions in section 1983 actions, the court must uphold the administrative decision unless it was arbitrary and capricious. Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir.1981). Further, courts need not review a disciplinary board's factual findings de novo, but need consider only whether the decision is supported by "some facts" or "any evidence at all." Id., quoting Willis v. Ciccone, 506 F.2d 1011 (8th Cir.1974). If the state provides a procedurally adequate hearing, it does not deprive an inmate of constitutional rights, because the constitution guarantees only the right to be free from deprivation of life, liberty or property without due process. Armstead v. Louisiana, 714 F.2d 360 (5th Cir.1983).
 
 
 12
 Aware of our limited role in reviewing this case, we turn now to the merits.
 
 III.
 
 13
 Stewart alleged that the warden and deputy warden violated his due process rights by failing to review thoroughly and objectively the disciplinary committee's action, that the commissioner of corrections violated his rights by failing to take any action on his appeal, and that the disciplinary committee abridged his due process rights by failing to consider the prison log as evidence that the incident never occurred. Stewart also alleged that Upton, because he issued the formal charge sheet, should not have served on the committee.
 
 
 14
 The defendants moved for a directed verdict in favor of these defendants. The court granted the motion. It held that Stewart had no legal claim against the commissioner because the commissioner has no obligation either under state law or under the prison rules to review disciplinary committee action, and further, that Stewart had not produced any evidence that the warden and deputy warden had not performed their duties properly. It held that Upton was not precluded by any prison rule from serving on the disciplinary committee. The district court also held that some evidence supported the disciplinary committee's decision that Stewart was guilty of a prison rules infraction, that Stewart's hearing had been procedurally regular, and that members of the disciplinary committee enjoyed absolute immunity for their decision not to consider the prison log evidence as requested by Stewart.[1] In this appeal, Stewart claims that none of these decisions is supported by substantial evidence.
 
 
 15
 Although later, at the close of the defendants' case, Stewart moved for a directed verdict against the remaining defendants, Corrections Officer Harris, and Corrections Officer Upton (in his capacity as the officer who wrote the rules violation report), at no time during the trial did Stewart move for a directed verdict against any of the defendants dismissed at the close of Stewart's case. More precisely, he failed to move for a directed verdict against the commissioner, the warden, the deputy warden, and the disciplinary committee, including Upton in his capacity as a committee member.[2] The law is well established in this circuit that this failure precludes his raising the issue of sufficiency of the evidence against those defendants on appeal. See Smith v. State Farm Fire and Casualty Co., 695 F.2d 202, 205 (5th Cir.1983), and Perricone v. Kansas City Southern Railway Co., 704 F.2d 1376, 1380 (5th Cir.1983) ("[m]otion for a directed verdict is a prerequisite, virtually jurisdictional"). When the party challenging the directed verdict on appeal fails to move for a directed verdict, "[o]ur inquiry is restricted to 'whether there was any evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in manifest miscarriage of justice.' " Scheib v. Williams-McWilliams Co., Inc., 628 F.2d 509, 512 (5th Cir.1980), quoting Coughlin v. Capitol Cement Co., 571 F.2d 290, 297 (5th Cir.1978). Our review is not coextensive with that of the trial court and ascertaining whether, viewing the evidence most favorable to the party opposing the motion, fair minded jurors might reach different conclusions. Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir.1969) (en banc).
 
 
 16
 We find more than "some" evidence in the record to support the trial court's decision to grant directed verdicts in favor of the commissioner, warden, deputy warden, and disciplinary committee. Indeed, the decision falls far short of producing a manifest miscarriage of justice that indicates the district court abused its discretion or that would justify reversing it on appeal. We therefore affirm the district court's directed verdict and now turn to the issues which were tried to the jury.
 
 IV.
 
 17
 Stewart claims that Harris and Upton denied his fourteenth amendment due process rights. The jury heard Stewart's evidence that both Harris and Upton acted in bad faith during the entire course of the disciplinary proceedings, thereby abusing legal process in violation of state tort law, and abridging his federal rights secured by section 1983. Specifically, Stewart attempted to prove that Harris harbored personal animosity toward him and therefore brought false disciplinary charges against him simply for harassment. He also presented evidence attempting to prove that Upton failed to inform him that by requesting a hearing before a full disciplinary committee, Stewart exposed himself to more punishment than he could have received for a minor offense processed by a single disciplinary officer. He also attempted to prove that Upton forwarded his case to a full disciplinary committee when he had not requested a committee hearing in writing as required by the prison rules, and that Upton, like Harris, harbored a personal bias toward him.
 
 
 18
 After a full jury trial exploring the truth or falsity of the disciplinary charges,[3] the alleged personal bias of both Harris and Upton, and the alleged procedural irregularities, the jury returned a verdict against Stewart and in favor of the defendants. Stewart now claims this verdict is not supported by substantial evidence.
 
 
 19
 The standard of appellate review applicable to jury verdicts is whether the record contains any competent and substantial evidence fairly tending to support the verdict. If so, the court will not overturn that verdict, even if different inferences and conclusions also might be supported by the evidence. Wood v. Diamond M Drilling Co., 691 F.2d 1165 (5th Cir.1982). Our review of the record indicates that this verdict is supported by substantial evidence. Stewart failed to support his allegations of personal bias with any credible evidence. Further, the evidence supports a conclusion that Stewart requested a full committee hearing in writing, as required by the prison rules, fully aware of the consequences of that request.
 
 
 20
 The formal charge sheet explicitly informs an inmate that a request to have a minor violation heard before a full disciplinary committee exposes the inmate to more serious punishment than could be imposed by a single disciplinary hearing officer.[4] Although Stewart did not submit a written request for a full disciplinary committee hearing on a separate piece of paper, he did sign the charge sheet indicating he had read the form and received a copy of it. Further, he signed appropriate lines on the charge sheet to request that the incident be investigated and indicating that he intended to call witnesses in his behalf. The handbook makes clear that full disciplinary committee hearings afford inmates these rights, but that hearings before a single disciplinary hearing officer do not.
 
 
 21
 As the district court explained to the jury, no court or administrative body has interpreted the "in writing" requirement of the prison rules. The jury reasonably could have concluded that by signing the charge sheet three times, two of these times in spaces indicating that he wished to exercise procedural rights afforded only inmates whose charges are heard before full disciplinary committees, Stewart requested the full committee hearing in writing. Further, in the light of the evidence that Stewart had been through this same procedure at least once before, the jury could have concluded that Stewart knew that by signing the charge sheet he was requesting a full committee hearing and that the committee could impose punishment exceeding that which a disciplinary officer could impose. We therefore uphold the jury's decision that Harris and Upton acted in good faith, and that Stewart requested a disciplinary committee, in writing, fully aware of the possible punishments it might impose.
 
 V.
 
 22
 From the beginning, Stewart's claim has been that he was accused falsely and treated unfairly by those processing the rules-violation charges. In addition to three administrative bodies, a United States magistrate, a United States District Judge, and a jury, all reviewed his claims in light of the evidence, and found each to be meritless. We agree with their decisions and therefore affirm the holdings of the district court denying Stewart damages under both section 1983 and state tort law.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The district court relied on this court's decision in Cruz v. Skelton, 502 F.2d 1101 (5th Cir.1974), holding that parole board members have absolute immunity from prosecution for quasi-judicial decisions. It also relied on the Fourth Circuit case of Ward v. Johnson, 690 F.2d 1098 (4th Cir.1982) (en banc), holding that a prison disciplinary committee has absolute immunity from prosecution over the quasi-judicial decision to admit or exclude evidence the accused prisoner requests it to consider. Id. at 1106. Although the state urges us to follow the Fourth Circuit and extend absolute immunity to disciplinary committees for quasi-judicial decisions, we do not need to address that issue in this case. The district court gave alternative bases for its directed verdict, and Stewart challenges the decision only on the basis of sufficiency of the evidence
 
 
 [2]
 At the close of the trial against defendants Upton and Harris, defense counsel moved for summary judgment. Stewart's counsel made a countermotion "simply that the verdict be directed in the plaintiff's favor if the Court see fit to direct a verdict in anyone's favor and award damages to the plaintiff." Fed.R.Civ.P. 50(a) requires that a motion for a directed verdict "state the specific grounds therefor." While failure to state the specific grounds may be sufficient basis for a court to deny the motion, e.g., Guest House Motor Inn, Inc. v. Duke, 384 F.2d 927 (5th Cir.1967), in this case the plaintiff's motion followed a lengthy discussion among Stewart's counsel, the defendants' counsel and the court, exploring whether enough evidence existed to require submitting Stewart's claims against Upton and Harris to the jury. Thus, the non-specificity of the motion is not fatal to Stewart's contesting the sufficiency of evidence supporting the jury's verdict. See infra, part IV
 
 
 [3]
 A federal court, of course, does not sit to review de novo evidence supporting prison disciplinary action, but only to redress due process violations. Armstead v. Louisiana, 714 F.2d 360, 361 (5th Cir.1983). The jury having found in favor of the defendants, we need not explore what possible error may have been committed in allowing a full review of the truth or falsity of the disciplinary charges
 
 
 [4]
 None of the prison rules in the relevant edition of the prison handbook approved in Gates v. Collier, 454 F.Supp. 579 (N.D.Miss.1978), aff'd 606 F.2d 115 (5th Cir.1979), fully explains the possible escalation of punishment that is a consequence of electing to have a minor violation reviewed by a full disciplinary committee. In fact, the rules governing "minor violations" refer only to the right to "refuse punishment" by the disciplinary hearing officer. Inmate Handbook Sec. 9-13(g). The handbook, in the section pertaining to "serious violations," does state that the disciplinary committee may impose any punishment authorized for a minor violation, as well as certain other punishments. Inmate Handbook Sec. 9-14(g)(3). The rules themselves, then, are somewhat confusing, and their failure to explain the possibility of being punished more severely by a disciplinary committee, even for a minor violation, than by a disciplinary hearing officer, is unfortunate. On February 27, 1978, however, the state department of corrections submitted the charge sheet form, along with other proposed forms and its Motion for Approval of Revised Disciplinary Rules and Procedures to the District Court. On March 6, 1978, the district court directed the plaintiffs in Gates to file written objections to the department's proposals. The plaintiffs did not object to the proposed charge sheet form. Cf. Gates, 454 F.Supp. at 580 (noting that plaintiffs' objections were selective). In the light of the fact that the district court approved the charge sheet form, we will not reverse a jury verdict on the basis that the rules fail to explain the escalation of punishment a prisoner risks when he requests a full committee hearing