Maurice GIBBS, Plaintiff-Appellant,

v.

John T. KING, Secretary, Department of Corrections, et al., Defendants-Appellees.

No. 84–3232.

United States Court of Appeals, Fifth Circuit.

Jan. 2, 1986.

R. Paul Yetter, Baker & Botts, Houston, Tex. (Court Appointed), for plaintiff-appellant.

J. Marvin Montgomery, Joseph Erwin Kopsa, Asst. Atty. Gen., Baton Rouge, La., for defendants-appellees.

Before GARZA, POLITZ, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge.

Maurice Gibbs, a prisoner incarcerated in the Louisiana State Penitentiary, brought suit under 42 U.S.C. § 1983 against John King, Secretary of the Louisiana Department of Corrections; Fulton Rabalais, Alvin Whitstine, Joe Lee Norwood, and Johnny Butler, all supervisory employees at the penitentiary; and Richard Alexander and Lee Slan, both prison guards. In a trial before the magistrate, at the close of Gibbs' case the magistrate granted defend-

ants' motion for involuntary dismissal under Fed.R.Civ.P. 41(b). Gibbs appeals. We affirm in part and reverse in part.

At trial, Gibbs testified that his troubles with appellees began on September 24 or 25, 1981, when he asked prison guard Slan for some toothpaste and salt. When Slan refused, Gibbs said he would write a complaint to the Department of Corrections. Slan responded that he could play the same game and could write Gibbs up too.

On October 6 Gibbs sent a letter to the Secretary of the Department of Corrections, with a copy to appellee Norwood. He complained among other things that Slan had threatened retailiation if he filed a complaint, and that Slan and prison guard Alexander had damaged his typewriter during a scrub-down on September 27. Gibbs received no response to this complaint, and no corrections officials ever discussed it with Slan.

On November 12 Gibbs was written up by Alexander for "Disobedience." The disciplinary report charged Gibbs with having mail and a jump suit under his mattress in violation of prison rules.

At a disciplinary hearing before a disciplinary officer, the prisoner may not present any evidence other than his own word, and the disciplinary officer may impose only a minor penalty. Supervisor Butler, who heard the disciplinary charge, thus refused to allow Gibbs to present affidavits in his defense and found Gibbs guilty "based on [the] credibility of [the prison] officer's statements." Butler sentenced Gibbs to a two-week loss of store privileges.

Gibbs then appealed to a disciplinary board that was comprised of appellees Rabalais and Whitstine. On appeal, Gibbs was entitled to a de novo hearing, including, among other things, the rights to notice, to present evidence and witnesses, and to a written summary of the reasons for the board's decision. Gibbs contended before the disciplinary board that the charge

was untrue, and he attempted to present a statement signed by two prisoners to support his defense. Because the statement was not sworn, Rabalais refused to consider it. Gibbs also contended that the policy prohibiting storage of items under mattresses was never posted. He asked to call another prison official to see if the policy had been posted but his request was refused. The board found Gibbs guilty and upheld Butler's sentence on the basis of Alexander's credibility.[1]

Gibbs repeated at the trial before the magistrate his contentions that he did not violate the mattress policy. Finding that the board's decision was supported by "some evidence," the magistrate upheld the board's finding of guilt. Second, Gibbs argued that prison rules required policies to be posted before prisoners could be charged with violating them and that the mattress policy was not posted. The magistrate made no factual findings regarding this issue. Third, Gibbs argued that the board should have considered the unsworn statements. The magistrate rejected this argument finding that the disciplinary board looked at the statements and properly could have rejected them either because they were not sworn or because they were not credible.

On November 16, Gibbs received two more disciplinaries, both from Slan. The first charged that when Slan was telling the inmates on Gibbs' tier to hold down the noise, Gibbs hollered out of his cell that Slan should hold down the noise because he was the only one making noise. The second charged that Gibbs, while on his way to the shower asked Slan if he had a problem. When Slan replied that he did not, Gibbs stated that he would have one soon. Gibbs was found guilty on both reports for "disrespect" under Rule 7 of the Disciplinary Rules and Procedures for Adult Prisoners of the Louisiana Department of Corrections.

---

**1.** The disciplinary board's decision was not appealable to Secretary King because there was no

serious penalty involved.

These November 16 "Disrespect" charges were heard by a disciplinary board. Gibbs challenged the accuracy of only the second of the two November 16 reports. He testified that when he went to the shower, Slan told him that he had a problem and that Slan would change his attitude. Gibbs replied that Slan had the problem, and Slan said that Gibbs would have one soon. When Gibbs got out of the shower, Alexander gave him the disciplinary and said Slan had sent it. Gibbs was found guilty "based on [his] own statements and [the] credibility of [the disciplinary] report and of officer [Slan's] statements" on the report and sentenced for both violations to five days in Isolation, suspended to ninety days.[2]

Secretary King denied appeal. In response to Gibbs' claim that Disciplinary Rule 7 was unconstitutional, he stated that "[i]t adequately describes unacceptable conduct so that the inmate is put on notice as to when he may be subject to punishment." The magistrate affirmed.

Finally, on November 21 Alexander wrote up Gibbs for "Disobedience Aggravated." Alexander stated that he gave Gibbs several direct verbal orders to stop hollering down the tier, but that Gibbs refused to obey.

This charge was heard by a disciplinary board, Gibbs testified that Alexander conducted a shakedown in his cell and began throwing Gibbs' property around. When Gibbs said he would complain to a supervisor, Alexander wrote up a disciplinary report saying that Gibbs had "hollered down the tier." Gibbs was found guilty "based on [the] credibility of [the] officer's statements." He was sentenced to five days in Isolation, suspended to ninety days. Secretary King denied appeal of this conviction and the magistrate affirmed.

In addition to the foregoing, Gibbs attempted to introduce testimony at trial designed to show that King and Norwood had failed properly to supervise department employees. This evidence would have included testimony of another inmate that he had complained about Slan. The magistrate refused to permit this testimony, stating that he would not permit Gibbs "to expand the pleadings."

On Gibbs' claim of harassment, the magistrate stated that the applicable standard was whether the disciplinary board's actions were arbitrary and capricious or an abuse of discretion. He noted that he did not find Gibbs to be a credible witness, and found that the board could reasonably have found the prison guard Alexander to be more credible than Gibbs.

Gibbs argues on appeal that the magistrate erred in dismissing his four claims: (1) that he had been denied due process, (2) that Disciplinary Rule 7 is unconstitutionally vague and overbroad, (3) that appellees had retaliated against him for his filing of an administrative complaint, and (4) that the magistrate erred in refusing to allow him to present evidence on his claim of supervisory liability and in refusing to subpoena appellee King.

### I.

In this appeal Gibbs makes several due process challenges to his convictions. He contends that appellees violated his rights by refusing to allow him to present evidence in his own behalf, by failing to post the mattress policy, and by finding him guilty without adequate evidence.

■ Appellees appear to argue that Gibbs has no protected interest in not being deprived of store privileges and in not having a suspended sentence imposed. The Supreme Court has held that the Due Process Clause itself does not afford inmates an interest in not being subject to conditions which are within the terms of confinement ordinarily contemplated by a prison sentence. But if there is a state-created

---

**2.** A report for which a suspended sentence is given will be removed from an inmate's record if he receives no other reports during the period of suspension. If the prisoner receives another report within the ninety days he may be required to serve the suspended sentence in addition to any new sentences which may be imposed.

liberty interest, violation of that interest can call into application constitutional due process protections. *Hewitt v. Helms,* 459 U.S. 460, 466–69, 103 S.Ct. 864, 868–70, 74 L.Ed.2d 675 (1983); *Meachum v. Fano,* 427 U.S. 215, 223–27, 96 S.Ct. 2532, 2537–40, 49 L.Ed.2d 451 (1976). We have recently recognized that Louisiana has created such an interest. It is found in the rules to guide prison discipline promulgated by the Department of Corrections. *McCrae v. Hankins,* 720 F.2d 863, 868 (5th Cir.1983). In *McCrae,* this court found that the substantive limitations placed on the discretion of prison officials by particularized standards or criteria served to create the liberty interest. 720 F.2d at 867. "[T]he creation of procedural guidelines to channel the decision-making of prison officials" without more does not create a protected liberty interest, but "requiring that certain procedures 'shall,' 'will,' or 'must' be employed" creates a liberty interest. *Hewitt v. Helms,* 459 U.S. at 471–72, 103 S.Ct. at 871. Where regulations place substantive limitations on official discretion, a state-created liberty interest exists. *McCrae,* 720 F.2d at 868; *Lewis v. Thigpen,* 767 F.2d 252, 261–62 (5th Cir.1985).

■ Under *McCrae's* reasoning, Gibbs had a right to due process protection. The Disciplinary Rules and Procedures state, "No prisoner may be punished except after a finding of guilt by the Disciplinary Officer or Disciplinary Board, and then only according to the penalty schedule for that violation." The remaining question is what process was due.

■ An inmate is entitled to prior notice, or "fair warning," of proscribed conduct before a severe sanction may be imposed.[3] *Adams v. Gunnell,* 729 F.2d 362, 369 (5th Cir.1984); *Ruiz v. Estelle,* 503 F.Supp. 1265, 1352 (S.D.Tex.1980), *aff'd in part and rev'd in part,* 679 F.2d 1115 (5th Cir.), *opinion amended in part and vacated in part,* 688 F.2d 266 (1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *see Grayned v. City of*

*Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). As to the hearing itself, it is not yet clear what procedures are required. At the least, there must be notice of the charge and some opportunity to be heard. *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871; *McCrae,* 720 F.2d at 868. There may be a qualified right to call witnesses and present documentary evidence. *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1976), but the process due may decrease as the severity of the punishment decreases. *Baxter v. Palmigiano,* 425 U.S. 308, 323–24, 96 S.Ct. 1551, 1560–61, 47 L.Ed.2d 810 (1976); *Wolff,* 418 U.S. at 572 n. 19, 94 S.Ct. at 2982 n. 19. Within these limits the federal policy is to afford wide discretion to prison officials. *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979); *Stewart v. Thigpen,* 730 F.2d 1002, 1005 (5th Cir.1984). Federal courts will not review the sufficiency of the evidence at a disciplinary hearing; a finding of guilt requires only the support of "some facts" or "any evidence at all." *Stewart,* 730 F.2d at 1005–06; *McCrae,* 720 F.2d at 868; *Smith v. Rabalais,* 659 F.2d 539, 545 (5th Cir. 1981), *cert. denied,* 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982).

■ In the mattress case, Gibbs was not permitted to present evidence during the initial hearing before the disciplinary officer. Even assuming that Gibbs had a due process right to present evidence other than his own testimony, appellees did not violate it. Although he could not present evidence in the hearing before Butler, he received a de novo hearing before the board. Gibbs does not dispute that the statement of other inmates he presented to Rabalais was unsworn. The board in its discretion could refuse to consider the statement on that ground. *See Smith,* 659 F.2d at 545 (citing *Baxter,* 425 U.S. at 322, 96 S.Ct. at 1559); *Thomas v. Estelle,* 603 F.2d 488, 490 (5th Cir.1979). There was also sufficient evidence to support the

---

**3.** This court has not yet decided what constitutional rights to prior notice a prisoner enjoys

(absent a state created right to notice) where only minor sanctions are involved.

board's findings based upon credibility choices.

 In one respect, however, the disciplinary board's decision may lack validity. The board found Gibbs' violation of the mattress policy to be in violation of Disciplinary Rule 4 which states in pertinent part: "Prisoners must obey the approved Posted Policies of the facility in which they are confined." Notice through posting is an element of the offense charged and is central to a finding of guilt. Nevertheless, the board apparently heard no evidence contradicting Gibbs' testimony that the mattress policy was unposted and made no finding of fact with respect to that issue. The magistrate as well made no finding on this issue. Accordingly, we are compelled to reverse the dismissal of this claim and remand for a determination by the magistrate as to "whether at least the [board's] decision is supported by 'some facts'— 'whether any evidence at all' supports the action taken by the prison officials." *Smith v. Rabalais*, 659 F.2d at 545. (quoting *Willis v. Ciccone*, 506 F.2d 1011, 1018 (8th Cir.1974)).[4] If not, then Gibbs is entitled to appropriate relief.[5]

## II.

Gibbs challenges the constitutionality of Disciplinary Rule 7 on First Amendment and due process grounds. Rule 7 provides:

No prisoner shall make or write derogatory or degrading remarks about an employee. Employees shall not be subjected to insults, unwarranted and uncalled for remarks, or other clearly intrusive verbal behavior when in the performance of their proper duties. Employees shall not be subject to unsolicited, non-threatening, abusive conversation, correspondence, or phone calls. Prisoners shall address employees by proper title or by "Mr.," "Ms.," "Miss," or "Mrs." whichever is appropriate. No prisoner shall curse an employee in his absence.

Gibbs asks for damages and for an injunction requiring appellees to modify Rule 7. He thus appears to be challenging the rule both on its face and as it was applied to him in the two November 16 disciplinaries.

 When a prison regulation is alleged to infringe upon First Amendment interests, it "must further 'one or more of the substantial government interests of security, order, and rehabilitation.'" *Adams*, 729 F.2d at 367 (quoting *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974)). A federal court will defer "to the professional judgment of prison officials 'in the absence of substantial evidence ... that the officials have exaggerated their response to these considerations.'" *Adams*, 729 F.2d at 367 (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977)); *Pell v. Procunier*, 417 U.S. 817 at 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495.

 We find that Rule 7 does not impermissibly inhibit prisoners' freedom of expression. Its clear purposes are to prevent the escalation of tension that can arise from gratuitous exchanges between inmates and guards and to enable employees to maintain order without suffering verbal challenges to their authority. Rule 7 is a reasonable and sensible response to that concern.

 Gibbs also complains that Rule 7 does not provide "fair warning" of the conduct that is proscribed. We find that Rule 7 provides reasonable and fair notice. Gibbs argues that it could apply to entirely innocent remarks and that it provides no guidelines for determining what remarks are unwarranted. In fact, however, the

---

**4.** In making this determination the court should be aware that it is not necessary to retry this disciplinary dispute since a de novo review of the disciplinary board's decision is not required. *Smith v. Rabalais*, 659 F.2d at 545. Where the record before the board or other documentary evidence substantiates its finding, this would obviate the need for a hearing on the issue. *Willis v. Ciccone*, 506 F.2d at 1019.

**5.** We note that even if the defendants are immune from an award of damages, Gibbs, at minimum, is entitled to have the offense stricken from his record.

rule employs the term "clearly intrusive" to modify "unwarranted and uncalled for remarks," and requires that such a remark be made to an employee "in the performance of [his] proper duties." While these terms are general in nature, in light of the setting of the prison milieu and the need for control and discipline we find them clearly adequate for their purpose. In the particular context, the rule was properly applied. The statement by Gibbs to Slan that Slan was making all the noise was unwarranted in that it could have interfered with Slan's duty to maintain order. His statement that Slan "would have a problem soon" bordered on a threat. Rule 7 provided adequate notice that these statements were improper.

### III.

Gibbs also argues that the magistrate erred in rejecting his harassment claim. The law is well established that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts. *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir.), *opinion amended in part and vacated in part*, 688 F.2d 266 (1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *Campbell v. Beto*, 460 F.2d 765, 768 (5th Cir.1972); *Andrade v. Hauck*, 452 F.2d 1071, 1072 (5th Cir.1971). In *Ruiz* we also held that prison officials were prohibited from "retaliation against inmates who complain of prison conditions or official misconduct." 679 F.2d at 1154. A guard thus may not harass an inmate in retaliation for the inmate complaining to supervisors about the guard's conduct.

Gibbs urges that the magistrate erred in dismissing his suit without making a finding on his harassment claim. Fed.R.Civ.P. 41(b) provides that upon motions to dismiss: "If the court renders judgment on the merits against the plaintiff, the court shall make findings as pro-

vided in Rule 52(a)." A motion under Rule 41(b) is not equivalent to a motion for a directed verdict, so the court must weigh the evidence and may consider witnesses' credibility. *Emerson Electric Co. v. Farmer*, 427 F.2d 1082, 1086 (5th Cir.1970); Fed.R.Civ.P. 41 advisory committee note, 1946 amendment to subdivision (b). The district court must enter findings, *Weissinger v. United States*, 423 F.2d 795, 798 (5th Cir.1970) (en banc), and its findings of fact are subject to review under the "clearly erroneous" standard of Fed.R.Civ.P. 52(a). *Reimer v. Smith*, 663 F.2d 1316, 1321 (5th Cir.1981); 9 C. Wright & A. Miller, Federal Practice & Procedure § 2376, at 248 (1971). Unclear or incomplete findings may require reversal. *Emerson Electric*, 427 F.2d at 1086–88.

We find that in this case the magistrate made findings sufficient to support his dismissal of Gibbs' harassment claim.[6] With respect to this claim, the court found that it was "exceedingly difficult to assign any significant degree of credibility to any of the testimony of Gibbs during this proceeding." Even though Gibbs may have been disciplined for violating an unposted policy, we do not believe that a single incident, involving a minor sanction, is sufficient to prove harassment. We do not believe, therefore, that the court's credibility determination was clearly erroneous.

Further, we find that the magistrate did not err in refusing to allow Gibbs to present evidence of another prisoner's complaints about harassment by prison guards. Even if Gibbs could have proved that Slan and Alexander had discriminated against another prisoner, this evidence, without a showing of pervasive harassment, would not have undermined the magistrate's finding that Gibbs was not a credible witness.

### IV.

Gibbs' final challenge is to the magistrate's refusal to issue a subpoena to

---

6. Gibbs' claim that Secretary King and Norwood are liable to him in their supervisory capacities relates specifically to his claim that he was harassed by prison guards Slan and

Alexander. There is no supervisory liability without primary liability. It was therefore proper for the magistrate to dismiss Gibbs' claim against King and Norwood.

appellant King. A district court's refusal to issue a subpoena is reviewable only for abuse of discretion. *Estep v. United States*, 251 F.2d 579, 582 (5th Cir.1958). Gibbs has not shown that the magistrate abused his discretion. Gibbs had not stated why he needed King's testimony, except for indicating at trial that he wished to question King about past prosecutions under Rule 7. *Cf. United States v. Bowman*, 636 F.2d 1003, 1013 (5th Cir.1981) (examining need for witness in criminal case). Gibbs did not need this testimony to challenge the rule on its face or to challenge his own disciplinaries. Thus the magistrate acted properly.

## V.

We **AFFIRM** in part and **REVERSE** in part and **REMAND** for proceedings not inconsistent with this opinion.