Tyrone GREEN, et al.,
Plaintiffs-Appellees,
Cross-Appellants,

v.

William T. (Billy) FERRELL, etc., et al., Defendants-Appellants,
Cross-Appellees.

Moses BELTON, etc.,
Plaintiff-Appellant,
Cross-Appellant,

v.

William T. FERRELL, etc., et al.,
Defendants-Appellees,
Cross-Appellees.

No. 85–4863.

United States Court of Appeals,
Fifth Circuit.

Oct. 8, 1986.

Rehearing and Rehearing En Banc
Denied Dec. 8, 1986.

Rehearings and Rehearing En Banc
Denied Dec. 16, 1986.

M.V. Westbrook, III, White & Morse, Gulfport, Miss., Handy, Fitzpatrick, Gwin & Lewis, Lucien C. Gwin, Jr., Natchez, Miss., for defendants-appellants, cross-appellees.

Shirley E. Payne, Jackson, Miss., for plaintiffs-appellees, cross-appellants.

Before THORNBERRY, JOHNSON, and WILLIAMS, Circuit Judges.

THORNBERRY, Circuit Judge:

## I. PROCEDURAL HISTORY

In February 1979, plaintiffs filed their original complaint, alleging that conditions in the Adams County Jail violated their civil rights. The trial court originally dismissed the case for lack of subject matter jurisdiction. This court reversed the trial court's dismissal and remanded the case for a trial on the merits. *Green v. Ferrell*, 664 F.2d 1292 (5th Cir.1982). On remand, the trial court certified the plaintiff class as "all present and future inmates of the Adams County Jail." The parties tried the case before a magistrate during July and December 1983.[1] The magistrate entered his opinion on August 7, 1985 and judgment on October 31, 1985.

That judgment granted the class plaintiffs in *Green* injunctive relief in four areas: "tight celling," food, laundry and personal hygiene, and exercise. It rejected the rest of the class plaintiffs' claims and also rejected the individual claims of Moses Belton. Defendants appeal that part of the judgment granting injunctive relief. Class plaintiffs cross appeal the magistrate's denying relief in three areas: access to courts, access to newspapers, and medical care. Moses Belton appeals the denial of his damages claim.

We affirm the magistrate's judgment as it applies to disciplinary "tight celling." We reverse all other injunctive relief. In addition, we conclude that prohibiting newspapers violates the inmates' first amendment rights and that the jail provides insufficient access to the courts. We remand to the magistrate to consider the appropriate relief. We also affirm the

---

1. Both parties agreed to try the case before a magistrate in accordance with 28 U.S.C. § 636(c). That provision grants the magistrate the power to enter a final judgment.

take-nothing judgment against Moses Belton.

## II. THE APPEAL

### A. *"Tight Celling"*

The plaintiff class includes both convicted prisoners (who serve their sentence in the county jail because the state penitentiary is overcrowded) and pre-trial detainees.[2] Every inmate in the Adams County Jail has his own cell, which measures approximately 60 square feet and includes a bed, a mattress, a face bowl with hot and cold water, a commode, and a light. The jail has central heating and air conditioning. Each cell block opens onto a day room, where the inmates eat, exercise, and shower. Although the parties use the term "tight cell" in a variety of ways, generally the term refers to the condition of being locked in an individual cell for 24 hours a day without access to the day room. The jailers "tight cell" prisoners for both security and punishment reasons. Prisoners not in "tight cell" had access to the day room for 5 hours a day at the time of the trial. Daily access to the day room fluctuated between twelve hours and two hours during the course of the litigation.

▮ Plaintiffs argue and the magistrate found that "tight celling is sometimes accomplished without any notice or hearing regarding the offense for which the inmate is so confined, or with a hearing scheduled days after the commencement of the tight cell confinement." Although the record contains conflicting testimony, the magistrate resolved those conflicts in favor of the inmates. After examining the record, we cannot say that his finding is clearly erroneous. The magistrate enjoined the defendants to comply with the notice and hearing requirements of *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and *Hewitt v. Helms*, 459 U.S.

460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in both disciplinary and administrative situations. We affirm the magistrate's judgment as it applies to disciplinary "tight-celling," but we reverse that portion of the magistrate's judgment that requires notice and a hearing within a reasonable time after the "tight celling in non-punitive, security-related situations."

To prove that "tight celling" without notice and a hearing violates their civil rights, plaintiffs must first demonstrate a liberty interest protected by the fourteenth amendment. "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt*, 459 U.S. at 466, 103 S.Ct. at 868. The due process clause by itself does not protect an inmate from any treatment that is " 'within the sentence imposed upon him and is not otherwise violative of the Constitution....' " *Id.* at 468, 103 S.Ct. at 869 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)). For example, the due process clause does not protect inmates placed in solitary confinement. *Id.; McCrae v. Hankins*, 720 F.2d 863, 866 (5th Cir.1983). "Tight cell" is "the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 468, 103 S.Ct. at 870.

Because the due process clause alone does not protect the liberty interest at stake in "tight celling" plaintiffs must prove that Mississippi created a protected liberty interest in their access to the day room. In *Hewitt*, the Court held that "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." 459 U.S. at 471, 103 S.Ct. at 871. In *Olim v. Wakinekona*, 461 U.S.

---

**2.** The rights of both convicted prisoners and pre-trial detainees in the context of "tight celling" derive from the due process clause of the fourteenth amendment. Under the due process clause, the rights of convicted prisoners and pretrial detainees are the same. The reason for "tight celling" inmates in both disciplinary and administrative situations is the same: maintaining the internal security and order of the Adams County Jail. *See Bell v. Wolfish*, 441 U.S. 520, 546–47 and n. 28, 99 S.Ct. 1861, 1877–78 and n. 28, 60 L.Ed.2d 447 (1979).

238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), the Court emphasized the fact that mandatory procedures alone do not create a liberty interest protected by the fourteenth amendment: "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. If officials may transfer a prisoner 'for whatever reason or for no reason at all,' ... there is no such interest for process to protect." *Id.* at 250, 103 S.Ct. at 1748 (citations omitted).

In *McCrae,* Louisiana mandated certain procedures before placing a prisoner in "extended lockdown." 720 F.2d at 867. In accordance with *Olim,* we proceeded to look for substantive limitations on "extended lockdown" and found them in the following Louisiana Department of Corrections regulation:

> 'No prisoner can be placed in extended lockdown for any reason unless he has been ... found guilty of violating one or more serious rules [listed elsewhere], or of being dangerous to himself or others,

or of being a serious escape risk, or of being in need of protection, or of posing a clear threat to the security of the facility, or of being the subject of an investigation conducted by non-institutional authorities into a serious felony.'

*Id.* at 868 (quoting Louisiana Department of Corrections Disciplinary Rules and Procedures for Adult Prisoners at 6 (March 15, 1981)). Thus we concluded that "Louisiana inmates do have a substantive interest in being free of extended lockdown." *Id.* (footnote omitted).

Plaintiffs cannot point to any statute or rule like the one in *McCrae* that places substantive limitations on all "tight celling." In fact, the record indicates that access to the day room has varied from twelve hours to two hours a day. Nevertheless, the Adams County Jail does have detailed disciplinary rules. Those rules list the offenses for which an inmate may be punished, mandate certain procedures including notice and hearing, and list the permissible punishments for each class of offense.[3] Those rules contain both sub-

---

**3.** SECTION G of the "ADAMS COUNTY LAW CENTER STANDARD OPERATING PROCEDURES AND EMPLOYEE REGULATIONS" provides in part:

   C. *DISCIPLINARY HEARING OFFICER (DHO).* The CHIEF JAILER or THE ASSISTANT CHIEF DEPUTY in the absence of the Chief Jailer or ANY CRIMINAL DEPUTY SHERIFF in the absence of both, shall be the DHO [Disciplinary Hearing Officer] in any particular case, properly noted in the Hearing book, and may dispose of all MINOR VIOLATIONS. The DHO will conduct and [sic] interview with the offender, WITHIN 5 working days after he receives the charge sheet and he can either dismiss the charge or impose certain punishments as defined below for minor violations but only if the offender accepts the punishment. If the offender refuses to accept the punishment, the case will be immediately forwarded to the full Disciplinary Committee for hearing as hereinafter set out.

   *ACTIONS WHICH CAN BE TAKEN BY DHO.*
   . . . .
   2. Temporary suspension of runaround and all other privileges such as packages, purchases etc., excluding incoming packages of US Mail or mail matter for a period of not to exceed ten (10) days.
   . . . .
   The offender will be notified immediately at the conclusion of the hearing, by the DHO of

his determination and also within 72 hours in writing of his determination. The notice shall state the evidence upon which the DHO based his decision and his reasons therefor. All notes and findings shall be placed in the offenders [sic] jail record file.

  D. *DISCIPLINARY COMMITTEE (DC).*
   All violations designated as SERIOUS, ot [sic] those considered MINOR but for which punishment was refused by the offender, shall be heard by the disciplinary committee.

   The Disciplinary Committee shall consist of three (3) persons: (1) One member of the Sheriffs [sic] Staff, (2) The County Prosecuting Attorney or Asst. District Attorney, (3) Any private Citizen from at large. All hearing will be presided over by the County/Assnt. DA. If necessary the County Attorney or a/District Attorney may designated [sic] someone to take their place if required.

   The Disciplinary Committee shall conduct the hearing as soon as possible but in no event shall the hearing be later than (10) ten regular working days after the receipt of the charge sheet. Additional time can be taken if necessary for investigation and preparation by the Disciplinary Committee.

   The County Attorney or A/District Attorney, as the presiding member of the Committee, is responcible [sic] for insuring that the accused offender is apprised of all his rights UNDER

stantive limitations and mandatory procedures and thus create a liberty interest when an inmate is punished.

In *Gibbs v. King* we found that a prisoner had a protected liberty interest when the only punishment at issue was loss of store privileges and five days in isolation that was suspended to ninety days. 779 F.2d 1040 (5th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986). Without looking at the punishment, we concluded that the prisoner had a liberty interest: "Under *McCrae's* reasoning, Gibbs had a right to due process protection. The Disciplinary Rules and Procedures state, 'No prisoner may be punished except after a finding of guilt by the Disciplinary Officer or Disciplinary Board, and then only according to the penalty schedule for that violation.'" *Id.* at 1044. Other circuits have also concluded that disciplinary rules create liberty interests because the substantive limitation is the finding of guilt. *See, e.g., Sher v. Coughlin,* 739 F.2d 77, 81 (2d Cir.1984) ("The state statutes and regulations authorizing restrictive confinement as punishment upon a finding of a disciplinary infraction will invariably provide sufficient limitation on the discretion of prison officials to create a liberty interest."). We thus conclude that the prisoners had a protected liberty interest at stake in disciplinary or punitive "tight celling."

The state statutes in both *Hewitt* and *McCrae* limited official discretion in both the disciplinary and non-disciplinary situations. *See Hewitt,* 459 U.S. at 470 n. 6, 103 S.Ct. at 871 n. 6; *McCrae,* 720 F.2d at 868. Plaintiffs have shown no statute, regulation, or rule of Mississippi or the Adams County Jail that places any substantive limitations on "tight celling" in non-disciplinary situations. The magistrate made no finding concerning such a rule in his opinion, and the plaintiffs can point to no such rule in their brief. In fact, beyond the reference to loss of day room privileges in the list of permissible punishments, we can find only one other reference to the term "tight cell" in all of the rules and regulations in the record:

> IN ANY EVENT, THE INMATE WILL BE CONFINED IMMEDIATELY TO HIS OWN CELL AT THE TIME OF THE ALLEGED VIOLATION until such time as the hearing is held and in the event of punishment, the time spent in his own cell be credited to any punishemnt [sic] administered by the DHO or the DC.

SECTION G, ADAMS COUNTY LAW CENTER STANDARD OPERATING PROCEDURES AND EMPLOYEE REGULATIONS. That rule imposes no substantive limitations on official discretion in non-disciplinary situations, because it does not purport to limit "tight celling" at all.

Plaintiffs argue that *Parker v. Cook* requires due process for both disciplinary and administrative confinement. 642 F.2d 865 (5th Cir.1981) In *Parker,* however, we initially found that "[t]he regulations also list the reasons an inmate may be placed in administrative confinement, thus acknowledging that arbitrary assignments are not authorized." *Id.* at 873 (footnote omitted). *Parker* thus addressed a situation in which the state had created liberty interests in disciplinary and nondisciplinary confinements by imposing substantive limitations

---

THESE RULES AND REGULATIONS AND PROCEDURES OF THE ADAMS COUNTY JAIL. He shall be responcible [sic] for rendering a written decision of the committee within four (4) working days from the conclusion of the hearing, which shall be made available to the accused. All of the decisions shall contain as a minimum all of the information of the determination by the DC of the charges.

*ACTIONS WHICH CAN BE TAKEN BY DC.*
. . . .

3. Any disposition authorized to be administered by the DHO for a Minor violation or in addition the DC may impose any of the following:

a. Recommend reclassification in the jail and assignment to a isolated cell.

b. Complete or Partrail [sic] suspension of jail privileges as to runarouns [sic] etc. day room, for any period not to exceed (30) thirty days on any one charge. In no event will any offender serve more than (60) sixty days connsecutively [sic] if found guilty of multiple charges.

on the discretion of prison officials in both instances.

■ Because neither Mississippi nor the Adams County Jail has limited the discretion of the jail personnel to "tight cell" an individual for non-disciplinary reasons we conclude that nondisciplinary "tight celling" implicates no liberty interest protected by the fourteenth amendment. We set aside that portion of the magistrate's judgment covering non-disciplinary "tight celling."[4]

■ Although affirming the magistrate's judgment as it applies to disciplinary "tight celling," we must clarify what process is due. The magistrate did not distinguish between the procedures that *Wolff* requires (which include the right to call witnesses and present documentary evidence) and those that *Hewitt* requires (in which a nonadversarial proceeding with a written statement by the inmate would suffice). *Compare Wolff,* 418 U.S. at 560–71, 94 S.Ct. at 2981–82 *with Hewitt,* 459 U.S. at 472–76, 103 S.Ct. at 871–73. Although *Hewitt* did not address disciplinary confinement, we hold that its procedures are sufficient here considering the punishment involved—losing four to five hours a day of access to the day room. *See Wolff,* 418 U.S. at 571 n. 19, 94 S.Ct. at 2982 n. 19 ("We do not suggest, however, that the procedures required by today's decision for

the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges."); *Gibbs,* 779 F.2d at 1044 ("There may be a qualified right to call witnesses and present documentary evidence.... [B]ut the process due may decrease as the severity of the punishment decreases."); *McCrae,* 720 F.2d at 868 ("*Hewitt* quite clearly did not require that an inmate facing disciplinary confinement be afforded the opportunity to present witnesses or evidence other than his own statement."). On remand, the magistrate should modify his order accordingly. We note in passing that consistent application of the disciplinary procedures as written would clearly comply with both *Wolff* and *Hewitt.*

**B. *Food***

■ The magistrate ordered that: "The jail must provide three nutritionally adequate meals per day. The third meal may be in the form of a mid-day or bedtime light meal, so long as the meals meet the recognized daily requirements both nutritionally and calorically." The eighth amendment requires that jails provide inmates with "well-balanced meal[s], containing sufficient nutritional value to preserve health."[5] *Smith v. Sullivan,* 553 F.2d 373, 380 (5th Cir.1977). The Adams County Jail currently serves two meals a day. The magistrate found that "experts for both

4. "When an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings...." *Pullman-Standard v. Swint,* 456 U.S. 273, 291, 102 S.Ct. 1781, 1791, 72 L.Ed.2d 66 (1982). Nevertheless, we feel that "the record permits only one resolution of the factual issue." *Id.* at 292, 102 S.Ct. at 1792. Analyzing eighteen volumes of record detailing eight days of trial testimony we are unable to find any evidence to support plaintiff's claim that Mississippi has created a liberty interest in non-disciplinary "tight-celling." Presented with a lengthy record and plaintiffs' thorough brief (which cites numerous provisions of the Mississippi Code), we decline to remand on the issue of plaintiff's liberty interest. *Compare Parker v. Cook,* 642 F.2d 865, 876–77 (5th Cir.1981) (trial court's order exceeded scope of evidence in

record) and *Lewis v. Thigpen,* 767 F.2d 252, 262 (5th Cir.1985) (insufficient evidence in the record to decide liberty interest issue).

5. The plaintiffs do not distinguish between the rights of convicted prisoners under the eighth amendment and the rights of pre-trial detainees. "Due process requires that a pretrial detainee not be punished." *Wolfish,* 441 U.S. at 535 n. 16, 94 S.Ct. at 1872 n. 16. The appropriate analysis for the pre-trial detainees requires that the eighth amendment claims presented here (food, laundry and hygiene, exercise and medical care) be analyzed within a due process framework to see whether the conditions in the Adams County Jail constitute punishment in the constitutional sense. *Id.* at 535, 94 S.Ct. at 1871. Acknowledging that distinction, we conclude that the eighth amendment claims presented here also fail when analyzed within a due process framework.

the defendants and the plaintiffs agreed that the menus were nutritionally adequate in all areas except Vitamin D." He also cited testimony of the jail physician that the inmates had no medical problems caused by inadequate diet. In light of the magistrate's findings we set aside that portion of the judgment requiring a third meal. Expert recommendations do not create constitutional standards under the eighth amendment. *See, e.g., Rhodes v. Chapman,* 452 U.S. 337, 348 n. 13, 101 S.Ct. 2392, 2400 n. 13, 69 L.Ed.2d 59 (1981).

#### C. *Laundry and Personal Hygiene*

■ The third portion of the magistrate's judgment requires the following: "Commercial laundry services or on-site laundry facilities must be employed on a regular basis to clean inmate clothing. Each inmate who remains 24 hours after booking must be provided with soap, toothbrush and toothpaste, which shall be replenished as needed." Jails must provide "reasonably adequate" sanitation. *See Newman v. Alabama,* 559 F.2d 283, 291 (5th Cir.1977), *modified on other grounds sub nom. Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114, *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978). The magistrate made the following findings in this area:

Prisoners are furnished no clothing, hygienic materials such as tooth brush and tooth paste, or laundry services. Clothing and personal hygiene materials are provided by prisoners' families, as are laundry services. Prisoners are given only a mattress cover, towel and toilet tissue upon booking. The mattress cover and towel are regularly commercially laundered. Upon request, prisoners are provided minimal clothing and hygienic materials by the jail if they have no funds or family to furnish them. There is no laundry facility, no washer or dryer available to the prisoners. If his family does not provide for the prisoner's laundry, the prisoner must hand wash his clothing in the sink. Laundry detergent is provided. Inmate testimony was that on occasion bar soap was used to wash

clothing, and one prisoner, under tight cell, indicated that he had to wash clothes in the toilet when his wash bowl was out of order. This appears to be a one-time occurrence.

In light of those findings (particularly the finding that the jail provides hygienic materials upon request), we reverse that portion of the magistrate's judgment requiring the jail to provide additional laundry service and hygienic materials.

#### D. *Exercise*

■ Finally the magistrate's judgment enjoined the jail to provide "access to outdoor exercise or to an indoor excercise facility at least one hour per day." The magistrate found that

[t]he only exercise inmates receive is that devised by themselves while confined to their individual cells or in the few hours each day they are outside their cells in the day room area. There is no indoor exercise room, and no outdoor exercise is permitted, due to limited space—the Adams County Jail is located in a downtown area.

In *Jones v. Diamond,* we affirmed by an equally divided court the district court's refusal to require the Jackson County, Mississippi jail to provide exercise for prisoners. 636 F.2d 1364, 1376 (5th Cir.) (en banc), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). In *Ruiz v. Estelle,* we explained the appropriate analysis for an exercise claim: "Of particular importance in determining an inmate's need for regular exercise are the size of his cell, the amount of time the inmate spends locked in his cell each day, and the overall duration of confinement." 679 F.2d 1115, 1152 (5th Cir.1982) (footnotes omitted), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). The record indicates that each prisoner has a sixty-three square foot cell to himself and five hours per day in the day room. "The average pre-trial detainee stays in the Adams County Jail 10 days, convicted felons 75 days." In addition, the magistrate cited testimony by the jail physician that he had observed

"no medical deficiency due to ... lack of exercise, or sensory deprivation." Under these conditions and taking into account the warning in *Ruiz* that "the evidence in each case should support the existence of any health hazard under the specific circumstances involved," 679 F.2d at 1152, we set aside that portion of the magistrate's judgment requiring the Adams County Jail to provide outdoor exercise or an indoor exercise facility.

### III. THE CROSS APPEAL

#### A. *Newspapers*

■ Appellees correctly contend that the jail's prohibition on newspapers violates the first amendment. This case is factually indistinguishable from *Mann v. Smith*, 796 F.2d 79 (5th Cir.1986):

> [T]he ban on newspapers and magazines must be struck down under the first amendment if it represents an 'exaggerated response' by jail officials to the legitimate need to 'preserve internal order and discipline and to maintain institutional security.' *Bell v. Wolfish*, 441 U.S. at 547–48, 99 S.Ct. at 1878–79. The patently underinclusive nature of the regulation strongly suggests that it is indeed an exaggerated response....

*Mann*, 796 F.2d at 82. If anything, the Adams County rule is even more underinclusive because it prohibits newspapers but not magazines.

#### B. *Access to Courts*

The appellees also claim that the magistrate erred in dismissing their claim that the Adams County Jail provides the inmates insufficient access to the courts. The magistrate found that the inmates must request specific volumes from the Adams County Law Library. An inventory of the library is available to all inmates. The jail personnel obtain the requested books twice a week. In addition, the record indicates that the jail rules permit the prisoners to request only two books at a time. The magistrate further found: "Inmates prepare their own pleadings in some cases, and writwriters assist some other prisoners. Writing materials and

stamps are provided to the indigent upon request. Virtually all inmates have had legal representation in their criminal, as well as in this civil proceeding." On similar facts, we held in *Morrow v. Harwell* that "the bookmobile checkout system, accompanied by circumscribed assistance from law students, does not meet the *Bounds* requirement." 768 F.2d 619, 623 (5th Cir.1985).

> In the absence of some sort of direct legal assistance, which need not be by trained lawyers, the inmates must be given access to a library as required in *Bounds* [*v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)]. That access is not met by a system allowing a prisoner to check out books through a weekly bookmobile. The Federal Supplement, the Federal Reporter and the Supreme Court Reporter today consist of a total of approximately fifteen hundred volumes. Even a quick research project by a trained lawyer may require reference and cross reference to numerous volumes. Such a task would be impossible to complete with no legal assistance and only the limited library program presently in place.

*Id.* The magistrate did not find and the record does not indicate that the Adams County Jail provides any "direct legal assistance." Without that, the present access to the Adams County Law Library is no more than we found inadequate in *Morrow*. That the inmates have had legal representation in their criminal cases is irrelevant because *Bounds* applies to postconviction relief. *See Id.*

■ Plaintiffs' representation in this lawsuit does not defeat their *Bounds* claim. In *Mann*, this court rejected a *Bounds* claim because "Mann proved in an irrefutable manner that he was able to file a legally sufficient complaint: by doing so." 796 F.2d at 84 (footnote omitted). Although superficially appealing, that argument fails because the plaintiff class here includes all present and future inmates of the Adams County Jail. The court in *Mann* distinguished *Morrow* along the same lines:

In *Morrow,* we concluded that pretrial detainees, some of whom had been held for about the same length of time that Mann was held, had a right to more legal assistance than Mann was provided with. This strongly suggests that the Midland County Jail's policy on legal assistance for inmates was not what it should have been.

*Morrow,* however, was a class action in which declaratory and injunctive relief was sought, while this is an individual suit brought by a person who is no longer being held at the Midland County Jail. *Id.* at 83. We thus conclude that the Adams County Jail does not provide adequate access to the courts as required by the Supreme Court in *Bounds.*

#### C. Medical Care

■ The last issue raised by class plaintiffs on their cross appeal is inadequate medical care. The record supports the magistrate's findings in this area, and we agree with the magistrate that the Adams County Jail provided adequate medical care. *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Ruiz v. Estelle,* 679 F.2d at 1149.

#### D. *Moses Belton's Individual Claims*

The magistrate also found that Moses Belton's individual claims (medical care and confiscation of a letter from his attorney) were meritless. The findings supporting those conclusions are not clearly erroneous, and we therefore affirm the magistrate's judgment with respect to Moses Belton's individual claims.

### IV. CONCLUSION

The magistrate's judgment granted plaintiffs injunctive relief in four areas: "tight celling," food, laundry and hygiene, and exercise. We affirm that portion of the judgment that applies to "tight celling" in disciplinary situations, noting, however, that the procedures in *Hewitt* suffice for the purposes of due process. We also affirm the take-nothing judgment against Moses Belton. We reverse the rest of the

magistrate's judgment. In addition, we hold that prohibiting newspapers violates plaintiffs' first amendment rights and that the jail must provide better access to the courts in accordance with *Bounds* and *Morrow.* On remand, we leave the question of the appropriate relief on those two issues to the magistrate. We recommend to the magistrate this court's discussion of the appropriate type of relief in *Morrow,* 768 F.2d at 627–28.

AFFIRMED IN PART, REVERSED IN PART and REMANDED.