REVISED, FEBRUARY 15, 2001

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 99-40924

_____

O'NEILL HUDSON,

Petitioner - Appellant,

versus

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE INSTITUTIONAL DIVISION

Respondent - Appellee.

Appeal from the United States District Court
For the Eastern District of Texas

February 12, 2001

Before DAVIS and  EMILIO M. GARZA, Circuit Judges, and POGUE,  Judge.[*]

EMILIO M. GARZA, Circuit Judge:

Prisoner O'Neill Hudson ("Hudson") appeals the district court's denial of his 28 U.S.C. §

2254 habeas corpus petition.  Hudson alleges that he remains unconstitutionally incarcerated because

---

[*]      Judge of the U.S. Court of International Trade, sitting by designation.

-1-

the prison disciplinary board, without any evidence, found him guilty of committing a riot and thus revoked his accrued good-time credits. We affirm.

Hudson, an inmate at the Unit of the Texas Department of Criminal Justice (Institutional Division), was found guilty by the prison disciplinary board of participating in a prison riot. The board punished him with: the loss of 3,530 days of good-time credit; thirty-days loss of recreational, commissary and personal property privileges; and thirty-days cell restriction. After exhausting his administrative appeals, Hudson petitioned for a writ of habeas corpus in the district court, alleging a violation of his Fourteenth Amendment due process rights. The district court adopted the recommendation of the magistrate judge, and denied the writ on the basis that some evidence supported the guilty finding.

The question presented to this court is whether there was any evidence to support the prison disciplinary board's guilty finding. We review this issue of law *de novo*. *See Dyer v. Johnson*, 108 F.3d 607, 609 (5th Cir. 1997) (citation omitted).

As a preliminary matter, we note that the alleged deprivation of Hudson's accrued good-time credits rises to the level of a constitutional violation only if Hudson can first establish that he has a protected liberty interest in those credits. *See Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (holding that a prisoner cannot be deprived of a protected liberty interest in good-time credits without procedural due process). The Supreme Court has explicitly held that state law determines whether "good time credits constitute a protected liberty interest." *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 447, 105 S.Ct. 2768, 2770, 86 L.Ed.2d 356 (1985). It appears undecided whether the loss of accrued good-time credits under

Texas law implicates due process concerns.[1]  We, however, do not need to decide this question in this

case.  Gary L. Johnson ("Johnson"), the director of the Texas Department of Criminal Justice and the

respondent in this case, has waived the issue by failing to raise it both in the district court and on

appeal.  *See Askanase v. Fatijo*, 130 F.3d 657, 668 (5th Cir. 1997).  We therefore assume that

Hudson has a protected liberty interest in his good-time credits.

The Supreme Court has held that prisoners are entitled to "those minimum procedures

appropriate under the circumstances and required by the Due Process Clause to insure that the state-

created right is not arbitrarily abrogated."  *Wolff*, 418 U.S. at 557; 94 S.Ct. at 2975.  In the setting

of prison disciplinary proceedings, due process requires that there be "*some* evidence to support the

findings made in the disciplinary hearing."  *Hill*, 472 U.S. at 454; 105 S.Ct. at 2773 (emphasis

added).  The goal of this standard))variously a "modicum of evidence," "any evidence," or "some

evidence"))is to balance the need to prevent arbitrary deprivation of protected liberty interests with

---

[1]      The Texas statute governing good-time credits was revised in 1998, and the language of the new section is clearly designed to avoid creating a protected liberty interest: "Good conduct time is a privilege and not a right." Tex. Govt. Code § 498.003.  On the other hand, the causal relationship between a disciplinary infraction and loss of good- time credits appears to make Texas law indistinguishable from the law at issue in *Wolff*.  *See* Tex. Govt. Code § 498.004 ("If...the inmate commits an offense or violates a rule of the division, the department may forfeit all or any part of the inmate's accrued good conduct time.").

The Fifth Circuit has addressed the issue from a variety of angles, but no case directly addresses the issue of whether Texas prisoners have a constitutional interest in their accrued good-time credits under current Texas law.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1079-1080 (5th Cir. 1997) (holding that there is no protected liberty interest in the restoration of good-time credits forfeited for disciplinary infractions under an older statutory scheme); *Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995) (holding that Texas parole statutes do not create a protected liberty interest under an older statutory scheme); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (noting the same but declining to decide whether there is a constitutional expectancy of early release under mandatory supervision when a prisoner has accrued good-time credits); *Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000) (resolving the issue left open in *Madison* and holding that there is a constitutional expectancy of early release created by the mandatory supervision provisions of an older statutory scheme).

the need to acknowledge institutional interests and avoid administrative burdens. *See id.* at 455; 105 S.Ct. at 2773-74. *See also Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981) (courts must see "'whether any evidence at all' supports the action taken by the prison officials.")

In this case, Johnson alleges that three pieces of evidence were offered against Hudson at the prison disciplinary hearing: (1) the written report of an officer who witnessed the riot, implicating Hudson; (2) testimony of another officer that Hudson appeared nervous following his detention; and (3) testimony that officers found wet clothes in Hudson's cell following the riot.

We hold that Officer M. Goolsby's identification of Hudson in her written report clearly constitutes "some" or "any" evidence to support the prison disciplinary board's guilty finding. Officer Goolsby wrote an incident report that states that she "looked into the wing and saw offender[] Hudson...fighting....Offenders were contained to the wing until a supervisor arrived. Offender Hudson #655877 was identified as one of the participants." This report standing alone is some evidence of Hudson's guilt. *See McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir.1999) (information contained in a conduct report is alone "some evidence" of guilt).

Hudson claims that Officer Goolsby's testimony at the disciplinary hearing undermines her incident report. Officer Goolsby's responses to the hearing officer's questions are admittedly less than clear. Furthermore, the testimony was very brief. The substantive parts of the testimony are quoted below:

> Q: You have been called as the charging officer in a case against offender Hudson, 655877. Can you give me a brief description of what his actions were or any participation in this action as far as the riot, and Level 1, Code 8 riot?
> A: I have no documentation on, if this inmate had blood or wet clothing.
> Q: Okay, other than you were told to write an, an account of cases on inmate participants involving an altercation, you don't have anything else substantiating there?
> A: No, sir.

The hearing officer then asked Hudson's counsel if he had any questions for Officer Goolsby; he answered no, ending the testimony. Hudson was present at the hearing to offer his defense and question witnesses. Neither Hudson nor his counsel asked Officer Goolsby any questions, despite being given the opportunity to do so. Hudson cannot now impugn the evidentiary value of Officer Goolsby's testimony. As the Regional Director noted in affirming the hearing officer's decision, "Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer." *See also Rabalais*, 659 F.2d at 545 (holding that "state prison officials enjoy wide discretion" in regards to a prison board's finding of guilt). In this case, the hearing officer, after listening to several witnesses and assessing their credibility, found that Hudson was guilty of committing a prison riot.

We do not assess the weight of the evidence in our review of a prison disciplinary hearing. *See Hill*, 472 U.S. at 455-56, 105 S.Ct. at 2774. Rather, we only examine if the guilty finding has "support of 'some facts' or 'any evidence at all.'" *Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir. 1986). The logic behind the Supreme Court's *Hill* standard is that prison disciplinary hearings are set in a uniquely charged atmosphere, in which prison administrators must act swiftly)) even if such efficiency is attained by sacrificing the due process protections guaranteed in other settings. *See id*. As the Supreme Court stated: "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context." *Hill*, 472 U.S. at 456, 105 S.Ct. at 2774 (internal citations

-5-

omitted).

Because we hold that Officer Goolsby's identification of Hudson provides "some evidence" of the prison disciplinary board's guilty finding, we do not need to examine the two other pieces of evidence.

AFFIRMED.

ENDRECORD

POGUE, International Trade Judge, specially concurring:

I agree with the majority that the question before us is whether there is any evidence to support the prison disciplinary board's guilt finding against Hudson. We will affirm if the decision of the disciplinary board is supported by "some evidence." *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). Under this standard, the reviewing court is not required to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh the evidence. *Id.* Nor do we require prison disciplinary hearings to be in conformance with the Federal Rules of Evidence, *see Walker v. O'Brien*, 216 F.3d 626, 637 (7TH Cir. 2000), or grant prisoners an absolute right to cross-examination. *See Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). The question is only whether there is any evidence to support the finding of the board. *See Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995).

In articulating this standard, the Supreme Court left the responsibility to the Circuit courts to determine the factors that constitute "some evidence." *See Hill*, 472 U.S. at 455-56, 105 S.Ct. at 2773 (writing that the standard is met if "there [is] some evidence from which the conclusion of the administrative tribunal could be deduced")(internal citation omitted). I write separately because every circuit which has considered this question has determined that the "some evidence" rule establishes a minimal threshold requirement of authenticity or reliability. These circuits require that "the evidence relied upon by the disciplinary board must bear sufficient indicia of reliability . . . ." *Viens v. Daniels*, 871 F.2d 1328, 1335 (7th Cir. 1989); *see also Harrison v. Dahm*, 911 F.2d 37, 41 (8th Cir. 1990), *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). Such a requirement is a necessary corollary if the "some evidence" rule is to have meaning.

Moreover, in *Smith v. Rabalais*, 659 F.2d 539 (5th Cir. 1981), there is also an indication that the Fifth Circuit requires an "indicia of reliability" to satisfy the "some evidence" requirement. Rabalais, a correctional officer, filed an incident report claiming that he had information from several reliable informers that inmate Smith was dealing narcotics. *See id.* at 541. At the prison disciplinary hearing, Rabalais was the only witness. *See id.* His testimony was based solely on the information provided by the confidential informant. *See id.* Further, Rabalais refused to answer any questions that might reveal the identity of the informant, including dates, places, times, persons involved, number of alleged sales witnessed, and the description of the drugs. *See id.*

Although this court found that the prison disciplinary board's decision "did not transgress the minimal due process required by the federal constitution," it did so hesitantly, noting that the case was on the "presently undefined outer contours of the prison discipline due process rule." *Id. at 546 n.20, 546.* The court's decision was based on the board's articulated security concerns, and on Rablais' confirmation that he knew the informers, had used them in the past, and that the informers had first hand knowledge. *See id.* The informants, according to Rablais, were credible. In relying on Rablais's testimony that the informers were credible, this court implied that some indicia of reliability is necessary to fulfill the element of "some evidence." I would adopt this standard explicitly.

It appears to me that the evidence in *Hudson* is also on the outer contours of the prison discipline due process rule. Officer Goolsby, the charging officer, wrote in her report that she witnessed Hudson's participation in the prison riot. At the hearing, however, her testimony was, to say the least, unclear. In response to the hearing officer's questions asking Officer Goolsby to describe Hudson's involvement in the riot, Goolsby responded that she had "no documentation on"

this.[2] Moreover, the hearing officer's next question and Officer Goolsby's response appear to assume as a fact that she had simply been following instructions in filling out the report.[3]

Nonetheless, as the majority makes clear, it is for the hearing officer to weigh and interpret the evidence and make credibility determinations. Here, as the majority explains, the hearing officer weighed the evidence and decided to believe the original report. I cannot conclude that it was unreasonable for him to have interpreted the testimony not to undermine the original report. In context, that report is not so devoid of any reliability or authenticity that it could not provide "some evidence" upon which to base the decision.

For these reasons, I concur.

---

[2]The tape of Officer Goolsby's testimony reflects a pause after the phrase "no documentation on." The pause is not reflected in the transcript.

[3]I do not find persuasive the majority's reliance on the counsel substitute's failure to further cross examine. It appears to me that the counsel substitute could reasonably have concluded that the Officer's direct testimony corroborated Hudson's explanation of the event.